1  JOHNSON & WEAVER, LLP
Brett M. Weaver, Esq. (SBN 204715)
2  600 West Broadway, Suite 1540
San Diego, CA  92101
3  Telephone: (619) 230-0063
Facsimile: (619) 255-1856
4  E-mail: brettw@johnsonandweaver.com

5  *Attorneys for Plaintiffs*
*Nicholas Horowitz & Chad Hamby*
6

7

8  # UNITED STATES DISTRICT COURT

9  ## SOUTHERN DISTRICT OF CALIFORNIA

10  NICHOLAS HOROWITZ, an
individual, and CHAD HAMBY, an
11  individual,

12                     Plaintiffs,

13          v.

14  GC SERVICES LIMITED
PARTNERSHIP, a Delaware limited
15  partnership doing business in
California,
16
                    Defendants.
17

| | |
|---|---|
| Case No.:  14-cv-02512-MMA-RBB | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**[REDACTED]**

| | |
|---|---|
| Date: | July 11, 2016 |
| Time: | 2:30 p.m. |
| Crtrm: | 3A |
| Judge: | Hon. Michael M. Anello |
| Trial: | October 25, 2016 |

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................. 1

II. Statement of facts ........................................ 1

III. Legal standard ........................................... 7

IV. The Court should grant partial summary judgment to Plaintiffs on their FDCPA claim ........................................ 8

    A. This case involves a consumer debt ................ 8

    B. GCS is a debt collector ........................... 8

    C. GCS violated several provisions of the FDCPA .... 9

        1. The voicemail violated § 1692d(6)'s requirement that "communications" meaningfully disclose they are from a debt collector and are for the purpose of collecting an alleged debt ................................ 9

        2. GCS's use of a "spoofing service" violated § 1692e(10)'s rule against using deceptive practices in connection with the attempt to collect an alleged debt ........ 10

        3. The voicemail violated § 1692f(5)'s prohibition against causing any person to incur charges by concealing the collection purpose of a communication ................ 12

V. The court should grant partial summary judgment to Plaintiffs on their Rosenthal Act claim ................................ 13

VI. The Court should grant partial summary judgment to Plaintiffs on their TCPA claim ........................................ 13

    A. The 9515 Number was a cellular telephone number ...... 14

    B. GCS used an automatic telephone dialing system (ATDS) .......... 14

    C. Neither Hamby nor Horowitz provided express consent ............. 17

VII. The Court should grant partial summary judgment to Plaintiffs on their CIPA Claim ........................................ 18

VIII. Conclusion ............................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Bianchi v. Bronson & Migliaccio, LLP*,
   No. 09-61164-CIV-UNGARO, 2010 U.S. Dist. LEXIS 146569
   (S.D. Fla. May 26, 2010)....................................................................15

*Clark v. Capital Credit & Collection Servs., Inc.*,
   460 F.3d 1162 (9th Cir. 2006)..........................................................9

*D.G. v. William W. Siegel & Assocs.*,
   791 F. Supp. 2d 622 (N.D. Ill. 2011) ...............................................10

*Davis v. Diversified Consultants, Inc.*,
   36 F. Supp. 3d 217 (D. Mass. 2014) .................................................15

*Donohue v. Quick Collect, Inc.*,
   592 F.3d 1027 (9th Cir. 2010)..........................................................11

*Echevvaria v. Diversified Consultants, Inc.*,
   No. 13 Civ. 4980 (LAK) (AKP), 2014 U.S. Dist. LEXIS 32136
   (S.D.N.Y. Feb. 28, 2014) .................................................................15

*Gates v. MCT Group, Inc.*,
   93 F. Supp. 3d 1182 (S.D. Cal. 2015) ................................................7

*Gonzales v. Arrow Fin. Servs., LLC*,
   660 F.3d 1055 (9th Cir. 2011)...............................................9, 11, 12

*Grant v. Capital Mgmt. Servs., L.P.*,
   449 F. App'x 598 (9th Cir. 2011)......................................................17

*Horowitz v. GC Servs. Ltd. P'ship*,
   No. 14cv2512-MMA (RBB), 2015 U.S. Dist. LEXIS 59878
   (S.D. Cal. Apr. 28, 2015) ...................................................................8

*In re Collecto, Inc. Telephone Consumer Protection Act Litig.*,
   No. 14-MD-02513-RGS, 2016 U.S. Dist. LEXIS 16319
   (D. Mass. Feb. 10, 2016)..................................................................15

*Kane v. Nat'l Action Fin. Servs., Inc.*,
   No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480
   (E.D. Mich. Nov. 7, 2011).................................................................10

*Kittok v. Leslie's Poolmart, Inc.*,
   687 F. Supp. 2d 953 (C.D. Cal. 2009)................................................4

*Lardner v. Diversified Consultants, Inc.*,
   17 F. Supp. 3d 1215 (S.D. Fla. 2014) ..........................................16, 17

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. Cal. 2012) ...................................................13

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) .................................................. 14

*Sherman v. Yahoo! Inc.*,
    No. 13cv0041-GPC-WVG, 2015 U.S. Dist. LEXIS 167177
    (S.D. Cal. Dec. 14, 2015) .................................................. 14, 15

*Simpson v. Vantage Hosp. Grp.*,
    12-cv-04814-YGR, 2012 U.S. Dist. LEXIS 172157
    (N.D. Cal. Dec. 4, 2012) .................................................. 18

**Statutes**

15 U.S.C. § 1692a(5) .................................................. 8

15 U.S.C. § 1692a(6) .................................................. 8

15 U.S.C. § 1692d .................................................. 9

15 U.S.C. § 1692d(6) .................................................. 10

15 U.S.C. § 1692e .................................................. 11

15 U.S.C. § 1692e(10) .................................................. 10

15 U.S.C. § 1692f(5) .................................................. 12

47 U.S.C. § 227(a)(1) .................................................. 14

47 U.S.C. § 227(b)(1) .................................................. 13

47 U.S.C. § 227(b)(1)(A) .................................................. 17

Penal Code § 632.7 .................................................. 18

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.
    Act of 1991*, Declaratory Ruling and Order,
    30 FCC Rcd. 7961 (2015) .................................................. 15, 17, 18

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.
    Act of 1991*, Declaratory Ruling, 27 F.C.C. Rcd. 15391 (2012) .................................................. 14

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot.
    Act of 1991*, Report and Order, 18 FCC Rcd. 14014 (2003) .................................................. 13

**Rules**

Fed. R. Civ. P. 56(a) .................................................. 7

# I.    Introduction

The Court previously held that Plaintiffs, Nicholas Horowitz and Chad Hamby (Plaintiffs), have adequately alleged claims against Defendant GC Services, Inc. (GCS) for violating the Fair Debt Collection Practices Act (FDCPA), the Telephone Consumer Protection Act (TCPA), and California's Invasion of Privacy Act (CIPA).  The Court should now grant partial summary judgment to Plaintiffs on each of one of these claims.[1]

# II.    Statement of facts

In 2002, Hamby and Horowitz moved in together in a house located in Oceanside, California.[2]  Horowitz obtained a traditional landline telephone number from Pac-Bell (now AT&T): (760) 757-9515 (the 9515 Number).[3]  The account was in Horowitz's name, the old-fashioned corded phone was located in his home office, and beginning in mid-2012, he was the phone's primary user.[4]

In December 2012, Hamby purchased a Dell personal computer from the QVC shopping network on an installment payment plan.[5]  Hamby does not recall ever providing QVC with the 9515 Number.[6]  Hamby gave the computer to his brother as a Christmas gift.[7]

Although California did not recognize gay marriage for most of the time they lived together, Hamby and Horowitz considered themselves married.  Sadly, in February 2013, they broke up.  Like any couple going through a divorce, they

---

[1] Plaintiffs are moving for partial summary judgment on liability issues only. The appropriate amount of damages will be determined at trial.

[2] Plaintiffs' Separate Statement of Undisputed Facts (PSS) at No. 1.

[3] PSS No. 2.

[4] PSS No. 3.

[5] PSS No. 4.

[6] PSS No. 5.

[7] PSS No. 6.

went through the difficult process of uncoupling their lives.  Among other things, they moved out of their house in Oceanside; closed their joint checking account; and, most relevant here, ported the 9515 Number from Horowitz's AT&T account to Hamby's Verizon "Friends and Family" cellular plan.[8]

As part of their "divorce agreement," Horowitz agreed to pay for Hamby's Verizon plan but would continue to be the primary user for the 9515 Number.[9] Only now, instead of being plugged into a phone jack in the wall, the same old-fashioned corded phone was now plugged into an antennae box that use cellular technology to make and receive calls.[10]  The phone was located in Horowitz's new apartment in Mill Valley, California, and Hamby had no access to it after March 2013.[11]

*      *      *

Because Horowitz and Hamby closed down their joint checking account, QVC could no longer automatically withdraw the monthly payments for the computer from that account. REDACTED

████████████████████████████████████.[12]

REDACTED █████████████████████████

████████████████[13] REDACTED ██████████

████████████████████████████████████

█████████████████████.[14]

---

[8] PSS No. 7.
[9] PSS No. 8.
[10] PSS No. 9.
[11] PSS No. 10.
[12] PSS No. 11.
[13] PSS No. 12.
[14] PSS No. 13.

1 | REDACTED

2 | .[15] REDACTED

3 |

4 |

5 | [16] REDACTED

6 |

7–16 |  REDACTED

17 | REDACTED .[17]

18 | REDACTED

19 |

20 | .[18] After listening to a generic outgoing message from a computerized female voice, Cisneros left the following voicemail:

[15] PSS No. 14.
[16] PSS No. 16.
[17] PSS No. 17.
[18] PSS No. 18.

3

Hello.  This message is for Chad Hamby.  My name is Ruby Cisneros.  I'd appreciate it if you can return my call, and you can reach me at (866) 862-2789.  Thank you.[19]

REDACTED [20]

REDACTED

[21, 22]

Plaintiffs lost one of their 2,000 minutes on their Verizon plan as a result of this voicemail.[23]

*     *     *

Like many Americans, the 2008 financial crisis impacted Horowitz and Hamby deeply.  As a result, they were unfortunately too familiar with debt collectors.  They were also aware of their rights.[24]

Suspecting that the voicemails were from a debt collector, Hamby authorized Horowitz to investigate any potential claims the two of them might have regarding the voicemail.[25]  Accordingly, on July 22 2013, Horowitz called the 5306 Number.  GCS account representative Frieda Espinoza answered the

---

[19] PSS No. 19.

[20] PSS No. 21.

[21] PSS No. 22.

[22] Using the exact same procedure, GCS left nearly identical voicemails on July 16 and July 18.  Because those voicemails fall outside the FDCPA's limitations period, they are not described here.  They would be relevant later on when determining the appropriate amount of damages.

[23] PSS No. 20.

[24] GCS will no doubt point out, once again, that Horowitz and Hamby have filed a number of lawsuits against debt collectors over the past few years.  But, as one district court explained in the context of a different remedial statute, "[t]he persistence of plaintiffs in bringing multiple lawsuits . . . does not demonstrate wrongdoing by plaintiffs anymore than it shows a hesitation of businesses to comply with the law."  *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 959 (C.D. Cal. 2009) (criticizing defendants' personal attack against a disabled plaintiff who regularly filed ADA lawsuits).

[25] PSS No. 23.

call.  After speaking with Horowitz for a few minutes, she transferred the call to her supervisor, Jennifer Goff.[26]  Horowitz does not remember making this call or anything about his conversations with Espinoza or Goff.[27]  But the recording produced by GCS reveals that Espinoza and Goff confirmed the following:

- The voicemails were left by GCS;
- GCS is a debt collector;
- The calls originated from GCS's San Antonio call center; and
- GCS used an "automatic dialing system" to place the calls.[28]

\*        \*        \*

Knowing that the statute of limitations on any potential FDCPA claims was quickly approaching, on July 16 and July 18, 2014, Horowitz called the 5306 Number at least six times to obtain information he needed for his and Hamby's complaint.[29]  Horowitz made all of these calls using either the 9515 Number or his mobile phone: (760) 822-3164.[30]  GCS recorded each one of these calls.[31]  The following is a summary of the calls.[32]

**Call #1 (July 16, 2014):** The account representative who answered the call, Rosie Patella, did not immediately disclose that the call was being recorded. With authorization, Horowitz said he was Chad Hamby.  Patella told Horowitz that GCS left the voicemail because it was trying to reach a "Katherine Buzzetta."  Patella eventually referred Horowitz to the "Nissan Motor Acceptance Department" to discuss the account.  More than three minutes into

---

[26] PSS No. 24.

[27] PSS No. 25.

[28] Weaver Dec. at Exs. P (at 2:13-16, 5:9-21) and Y.

[29] PSS No. 26.

[30] PSS No. 27.

[31] PSS No. 28.

[32] Unfortunately, the calls are not time stamped and it is difficult to tell the order in which they occurred.  Accordingly, the above list might not be in exact chronological order.

the call, and in response to Horowitz's question, Patella disclosed for the first time that "this is a recorded call."[33]

**Call #2 (July 16, 2014)**: An unnamed account representative spoke with Horowitz for 58 seconds before the phone went dead. The representative did not inform Horowitz that the call was being recorded.[34]

**Call #3 (July 16, 2014):** Horowitz spoke with Patella again. Patella told Horowitz that his account number was still pulling up the account for Kathryn Buzetta. Patella put Horowitz on hold for nearly three minutes while she spoke with someone in the Nissan Motors Acceptance Department. When she returned, Patella told Horowitz that GCS was going to remove his number so that he would not be bothered about that account. At no point during this 9 minute call did, Patella inform Horowitz that the call was being recorded.[35]

**Call #4 (July 18, 2014):** Horowitz spoke with an account representative named Elizabeth Rodriguez for over seven minutes. Like the account representatives before her, Rodriguez said the account associated with the 9515 Number belonged to "Buzetta, Kathryn." She further advised Horowitz to contact QVC directly to sort things out. Not until the end of the call did Rodriguez inform Horowitz that the call was being recorded, and only then, after Horowitz asked.[36]

**Call #5 (July 18, 2014)**: A GCS employee named Julian spoke with Horowitz for 1 minute and 58 seconds. After identifying himself and GCS, Julian asked Horowitz a few questions before the line went dead. At no point did, Julian disclose that the call was being recorded.[37]

---

[33] Weaver Dec. at Ex. Q at 5:4-6; Ex. Y.

[34] Weaver Dec. at Exs. R and Y.

[35] Weaver Dec. at Exs. S and Y.

[36] Weaver Dec. at Ex. T at 7:3-4; Ex. Y.

[37] Weaver Dec. at Exs. V and Y.

**Call #6 (July 18, 2014)**: Horowitz spoke with an account representative named Debra Guerra for 7 minutes and 58 seconds.  Despite trying several different searches (using the order number and customer number given to him by QVC), Guerra eventually told Horowitz she could not help him because she could not locate the file.  At no time did Guerra disclose that the call was being recorded.[38]

## III.   Legal standard

In *Gates v. MCT Group, Inc.*, 93 F. Supp. 3d 1182, 1185 (S.D. Cal. 2015), this Court described the legal standard for a motion for summary judgment as follows: "'A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  A fact is material if it could affect the outcome of the suit under applicable law.  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  *Gates*, 93 F. Supp. 3d at 1185 (citations omitted).

With these principals in mind, the Court should grant partial summary judgment to Plaintiffs on each one of their claims for relief.

---

[38] Weaver Dec. at Exs. U and Y.

## IV.   The Court should grant partial summary judgment to Plaintiffs on their FDCPA claim

"To state a FDCPA claim, the plaintiff must allege: (1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant attempting to collect the debt qualifies as a 'debt collector,' and (3) the defendant committed some act or omission in violation of the FDCPA." *Horowitz v. GC Servs. Ltd. P'ship*, No. 14cv2512-MMA (RBB), 2015 U.S. Dist. LEXIS 59878, at *10 (S.D. Cal. Apr. 28, 2015).

### A.   This case involves a consumer debt

The FDCPA covers alleged debts incurred "primarily for ***personal***, ***family***, or household purposes . . ." 15 U.S.C. § 1692a(5) (emphasis added). As detailed above, Hamby purchased the Dell ***personal*** computer as a Christmas gift for a ***family*** member (his brother).[39] GCS has no evidence to the contrary. Thus, there is no material dispute that this case arises from a "consumer debt."

### B.   GCS is a debt collector

In response to one of Hamby's requests for admission, GCS claimed it was unable to admit or deny whether it was a "debt collector" within the meaning of the FDCPA.[40] Yet, according to its website, "GC Services is the largest private collection agency in the United States."[41] Further, GCS designated its chief compliance officer, Bradley Batig, as its Rule 30(b)(6) witness in this case. Batig's "primary" job is to ensure GCS "is complying with all applicable laws to

---

[39] PSS No. 6.

[40] 15 U.S.C. § 1692a(6) defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly, or indirectly, debts owed or due or asserted to be owed to another.

[41] Weaver Dec. at Ex. K.

[its] collection activities."[42] REDACTED

[43] And, if that was not enough, GCS has been sued for violating the FDCPA nearly 175 times in the past two years.[44] Despite GCS's supposed ignorance to the contrary, there is no legitimate dispute that it is a "debt collector."

## C.   GCS violated several provisions of the FDCPA

The FDCPA "comprehensively regulates the conduct of debt collectors," and "is a strict liability statute." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011) (citation omitted); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1174-77 (9th Cir. 2006) (concluding that the FDCPA holds debt collectors strictly liable). Because it is a remedial statute, courts must interpret it "liberally." *Clark*, 460 F.3d at 1176.

The undisputed evidence shows that GCS's July 20, 2013 voicemail violated several provisions of the FDCPA.

### 1.   *The voicemail violated § 1692d(6)'s requirement that "communications" meaningfully disclose they are from a debt collector and are for the purpose of collecting an alleged debt*

Section 1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." In addition to this general ban on harassing or abusive conduct, § 1692d provides a non-exclusive list of six prohibited acts, including the "placement of telephone calls without meaningful

---

[42] Weaver Dec. at Ex. C at 5:4-13.

[43] Weaver Dec. at Ex. L.

[44] Weaver Dec. at Ex. M.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT; Case No.:  14-cv-02512-MMA-RBB

disclosure of the caller's identity."   15 U.S.C. § 1692d(6).   "Courts have routinely recognized that 'voicemails are communications' that must conform to the disclosure requirements of the FDCPA."   Order Denying Motion to Dismiss, Dkt. 13 ("Order") at 9:15-18 (citations omitted).

Further, the voicemail was a "communication" to Hamby regardless of whether he actually received it.   Order at 10:19-22.   Because there is no dispute that the voicemail failed to meaningfully disclose that it was coming from a debt collector, there is no dispute that Hamby is entitled to partial summary judgment on this claim.

The Court should likewise grant partial summary judgment to Horowitz on his 1692d(6) claim.   Indeed, other courts have held that third parties like Horowitz have standing to bring FDCPA claims based on messages intended for someone else.   *See D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 623-24 (N.D. Ill. 2011) (holding that voicemails that debt collector left on plaintiff's cell phone are actionable even though they were meant for somebody else); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480, at *13 (E.D. Mich. Nov. 7, 2011) (Defendant called plaintiff's cell phone seeking to collect debt belonging to a different Blockbuster account holder.   Plaintiff had standing to bring claims because defendant's pre-recorded messages lacked meaningful disclosure that the call was from a debt collector).

### 2.   *GCS's use of a "spoofing service" violated § 1692e(10)'s rule against using deceptive practices in connection with the attempt to collect an alleged debt*

Section 1692e(10) generally prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt . . . ."   By its terms, even an unsuccessful "attempt" to collect a debt by deceptive means is prohibited.

In the Ninth Circuit, a debt collector's liability under § 1692e takes into account whether the hypothetical least sophisticated consumer "'would likely be misled by a communication.'" *Gonzales*, 660 F.3d at 1061 (citations omitted). The key question is whether the misrepresentation could "frustrate a consumer's ability to intelligently choose his or her response" to an attempted debt collection. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010). REDACTED

REDACTED [45] REDACTED

.[46] By any definition, this duplicitous act could frustrate a consumer's ability to intelligently choose his or her response to the call. *See Gonzales*, 660 F.3d at 1062 ("'[A] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'") (citations omitted).

Upon receiving a call from a local area code, the consumer might be more inclined to answer the call, reasonably thinking it was coming from, by way of examples, a neighbor, a friend, a co-worker, his or her doctor's office, or his or her child's school. Much further down the list of probable callers would be a debt collector from another state. Thus, GCS uses the spoofing service to trick consumers to answer a call they might otherwise reject. Batig admitted as much during his deposition:

Q.:    REDACTED

A:

---

[45] PSS No. 22.

[46] PSS No. 21.

[47] Weaver Dec. at Ex. D at 69:17-22.

REDACTED

REDACTED

[48] REDACTED

"[49]  This fact alone is probably enough to warrant summary judgment against GCS.  *See Gonzales*, 660 F.3d at 1063 ("Where the law places affirmative limits on a debt collector's actions, the debt collector that 'goes perilously close to an area of proscribed conduct takes the risk' that it will be liable under the FDCPA for misleading consumers.") (citation omitted).

### 3.    *The voicemail violated § 1692f(5)'s prohibition against causing any person to incur charges by concealing the collection purpose of a communication*

Section 1692f(5) prohibits a debt collector from "[c]ausing charges to be made to any person for communications by concealment . . . ."  Such charges are "not limited to, collect telephone calls and telegram fees."  *Id*.

The Court has already held that GCS's voicemail would violate § 1692f(5) if it caused Plaintiffs to lose any minutes on their cell phone plan.  Order at 15:14-15 ("[T]he Court finds that Plaintiffs have sufficiently alleged that GCS incurred charges to Plaintiffs' cell phone bill in the form of lost minutes).  Thus, all that was left was the proof.

As a result of the July 20 voicemail, Hamby and Horowitz lost one of their 2,000 minutes.[50]  While admittedly not the worse FDCPA violation there is, this

---

[48] Weaver Dec. at Ex. X at 191.

[49] Weaver Dec. at Ex. D.

[50] PSS No. 20.

lost minute is enough to grant summary judgment to Plaintiffs on this claim. *See* Order at 15:13-14; *See also In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) (ruling that wireless subscribers who purchase a large "bucket" of minutes at a fixed rate are charged for those minutes, and for any minutes that exceed the "bucket" allowance.).

## V.    The court should grant partial summary judgment to Plaintiffs on their Rosenthal Act claim

As explained by the Court, "Rosenthal Act violations and FDCPA violations are viewed identically."  Order at 15:24-25.  Thus, the Court should grant summary judgment to Plaintiffs on their Rosenthal Act claim for the same reasons it should grant summary judgment on their FDCPA claims.

## VI.    The Court should grant partial summary judgment to Plaintiffs on their TCPA claim

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. Cal. 2012), citing 47 U.S.C. § 227(b)(1).  There are no triable issues of fact on any of these three elements here.

## A.    The 9515 Number was a cellular telephone number

In March 2013, the 9515 Number was converted from a landline to a cellular line.[51]  Despite GCS's initial protests to the contrary, its own discovery confirms that this is so.[52]

## B.    GCS used an automatic telephone dialing system (ATDS)

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  "Since the statute's passage in 1991, the FCC has issued regulations expanding the statutory definition of an ATDS, and this Court is bound by those rulings under the Hobbs Act."  *Sherman v. Yahoo! Inc.*, No. 13cv0041-GPC-WVG, 2015 U.S. Dist. LEXIS 167177, at *7-8 (S.D. Cal. Dec. 14, 2015).[53]

In 2012, the FCC explained that the definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 ¶ 2 n.5 (2012).  Misreading this interpretation, several courts held that where a call "must be 'triggered' by human intervention, the system is not an ATDS."  *Sherman*, 2015 U.S. Dist. LEXIS 167177 at *12-13.

---

[51] PSS No. 7.

[52] Weaver Dec. at Ex. N.

[53] Admittedly, FCC declaratory rulings that were enacted after the calls in question are not binding on a court.  They do have "persuasive value" however. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (finding FCC's 2012 TCPA declaratory ruling "persuasive" when determining whether calls made in 2010 and 2011 violated the TCPA).

14

In 2015, the FCC "backed away from the 'human intervention' element by rejecting the argument that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." *Id*. at \*14; *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling and Order ("FCC 2015 Ruling"), 30 FCC Rcd. 7961, 7976 ¶ 20 (2015). Instead, "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id*. at 7975.  In short, "the FCC's definition of an ATDS is based on the capacity of a dialer to operate without human intervention, and not on whether *some* act of human agency occurs at some point in the process." *In re Collecto, Inc. Telephone Consumer Protection Act Litig.*, No. 14-MD-02513-RGS, 2016 U.S. Dist. LEXIS 16319, at \*13 (D. Mass. Feb. 10, 2016). After all, "'every ATDS requires some initial act of human agency — be it turning on the machine or pressing 'Go.'" *Id*. at n.10 (citation omitted).

Notably, Espinoza admitted to Horowitz that GCS used an "automatic dialing system" to place the July 20, 2013 call.[54]  Moreover, other district courts have held that LiveVox is an ATDS within the meaning of the TCPA.  *See Bianchi v. Bronson & Migliaccio, LLP*, No. 09-61164-CIV-UNGARO, 2010 U.S. Dist. LEXIS 146569, at \*6 (S.D. Fla. May 26, 2010) ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention . . . ."); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass. 2014) ("In short, the LiveVox system, as utilized by defendant, was an ATDS."); *Echevvaria v. Diversified Consultants, Inc.*, No. 13 Civ. 4980 (LAK) (AKP), 2014 U.S. Dist. LEXIS 32136, at \*25-26 (S.D.N.Y. Feb. 28, 2014) (same).  The district court in

---

[54] Weaver Dec. at Ex. P at 5:20-24; Ex. Y.

*Lardner v. Diversified Consultants, Inc.,* 17 F. Supp. 3d 1215 (S.D. Fla. 2014), made clear that LiveVox was an ATDS under facts strikingly similar to those presented here.

In *Lardner*, the process worked like this. A member of the debt collector's IT staff "program[s] a set of telephone numbers into the LiveVox system each day." *Id.* at 1218. Those numbers would be stored in the system for the rest of the day. *Id.* at 1221. To initiate a call, a collector "hits a button that says next call, LiveVox dials the next number on the list, and LiveVox connects the call if someone comes on the line." *Id.* at 1218. "When LiveVox establishes a connected call, the collector will connect to the call." *Id.* A consumer who received a voicemail as a result of this process filed a lawsuit against the debt collector for violating the TCPA. On cross motions for summary judgment, the *Lardner* court determined that LiveVox "qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list." *Id.* at 1223. The Court should reach that same conclusion here.

REDACTED

.[55] REDACTED

.[56] REDACTED

[57]

Thus, much like *Lardner*, LiveVox "qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list." *Id.* at 1223.

---

[55] PSS No. 15.

[56] PSS No. 16.

[57] PSS No. 17.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT; Case No.: 14-cv-02512-MMA-RBB

## C.    Neither Hamby nor Horowitz provided express consent

The TCPA exempts from liability calls made to a cell phone "with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  "[P]rior express consent" is an "affirmative defense for which the defendant bears the burden of proof."  *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600, n.1 (9th Cir. 2011).

In the FCC's 2015 Ruling, it interpreted the term "called party" to mean "the subscriber and customary users" of the phone.  FCC 2015 Ruling, 30 FCC Rcd. at 8001 ¶ 74.  There is no dispute that, in July 2013, Hamby was the subscriber and Horowitz was the customary user of the phone.

GCS appears to claim it had Hamby's prior express consent because he gave QVC the 9515 Number when he purchased the computer.  According to Batig:



The problem is that GCS has no proof Hamby did, in fact, give the 9515 Number to QVC.[59]  Nor does it have any proof that Hamby gave QVC consent to call that number.[60]  Thus, GCS cannot meet its burden of demonstrating it had Hamby's prior express consent.  *See Lardner*, 17 F. Supp. 3d at 1224 ("[T]here is no evidence regarding how T-Mobile obtained Plaintiff's cell phone number and whether she provided it in connection with the alleged debt on her account.

---

[58] Weaver Dec. at Ex. D at 65:2-18.

[59] Weaver Dec. at Ex. D at 63:18-19 REDACTED

[60] Weaver Dec. at Ex. D at 65:16-18 REDACTED

Thus, Defendant has failed to show a genuine issue of material fact as to whether Plaintiff gave prior express consent to receive Defendant's phone calls."); FCC 2015 Ruling, 30 FCC Rcd. at 7991 ¶ 52 ("The TCPA and the Commission's rules plainly require *express* consent, not implied or 'presumed' consent.") (emphasis original).

Likewise GCS cannot show it had Horowitz's prior express consent before making the call.  In fact, it makes no claim that it did.[61]

Because there are no triable issues of fact on any element of Plaintiffs' TCPA claim, the Court should grant partial summary judgment in their favor.

## VII.  The Court should grant partial summary judgment to Plaintiffs on their CIPA Claim

California Penal Code § 632.7's prohibition against recording communications applies to "[e]very person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."  Thus, to state a claim under § 632.7, all a plaintiff must show is (1) the defendant received communications via calls made on plaintiff's cellular phone; (2) the defendant recorded the calls; and (3) the defendant did so without obtaining plaintiff's consent.  *Simpson v. Vantage Hosp. Grp.*, 12-cv-04814-YGR, 2012 U.S. Dist. LEXIS 172157, at *22-23 (N.D. Cal. Dec. 4, 2012).

The undisputed evidence in this case is as follows.  Horowitz made six calls to GCS using a cellular phone.[62]  GCS recorded every one of these calls.[63]

---

[61] Weaver Dec. at Ex. D at 65:2-7 REDACTED

[62] PSS Nos. 26 and 27.

GCS started recording the calls before anyone ever spoke.[64] REDACTED

REDACTED

.[65] REDACTED

[66]   With the exception of the July 23, 2013 call, GCS did not inform Horowitz that it was recording any of his calls during the "initial greeting" portion.  In most instances, GCS either did not disclose that it was recording the call at all, or waited until Horowitz asked at the end of the call.[67]

Based on these undisputed facts, the Court should grant partial summary judgment to Horowitz on his CIPA claim.

## VIII. Conclusion

Because there is no genuine dispute that GCS violated the FDCPA, Rosenthal Act, TCPA, and CIPA, the Court should grant partial summary judgment to Plaintiffs on each one of these claims.

Respectfully Submitted,

Dated: May 23, 2016                JOHNSON & WEAVER, LLP

By: */s/ Brett M. Weaver*

BRETT M. WEAVER

Brett M. Weaver (SBN 204715)
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
brettw@johnsonandweaver.com

*Attorney for Plaintiffs Nicholas Horowitz & Chad Hamby*

---

[63] PSS No. 28.
[64] PSS No. 29.
[65] Weaver Dec. at Ex. D.
[66] PSS No. 30.
[67] PSS No. 31.