1  JOHNSON & WEAVER, LLP
   Brett M. Weaver, Esq. (SBN 204715)
2  600 West Broadway, Suite 1540
   San Diego, CA 92101
3  Telephone: (619) 230-0063
   Facsimile: (619) 255-1856
4  E-mail: brettw@johnsonandweaver.com

5  *Attorneys for Plaintiffs*
   *Nicholas Horowitz & Chad Hamby*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HOROWITZ, an individual, and CHAD HAMBY, an individual,<br><br>          Plaintiffs,<br><br>     v.<br><br>GC SERVICES LIMITED PARTNERSHIP, a Delaware limited partnership doing business in California,<br><br>          Defendants. | Case No.: 14-cv-02512-MMA-RBB<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[REDACTED]**<br><br>Date:     July 18, 2016<br>Time:    2:30 p.m.<br>Crtrm:   3A<br>Judge:   Hon. Michael M. Anello<br><br>Trial:      October 25, 2016 |

# **TABLE OF CONTENTS**

**Page**

I. Plaintiffs are entitled to partial summary judgment as a matter of law .................................................................................................................. 1

    A. GCS has failed to raise a triable issue as to Plaintiffs' FDCPA claims ..................................................................................................... 1

    B. GCS has failed to raise a triable issue as to Plaintiffs' TCPA claims ..................................................................................................... 6

    C. GCS has failed to raise a triable issue as to Horowitz's CIPA claims ..................................................................................................... 8

    D. GCS has failed to raise a triable issue as to Plaintiffs' Article III standing ............................................................................................ 9

II. Conclusion .......................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Baker v. G. C. Services Corp.*,
 677 F.2d 775 (9th Cir. 1982).................................................................5

*Chatman v. GC Servs., LP*,
 57 F. Supp. 3d 560 (D.S.C. 2014).........................................................2

*Conboy v. AT&T Universal Card Servs. Corp.*,
 84 F. Supp. 2d 492 (S.D.N.Y. 2000)......................................................3

*D.G. v. William W. Siegel & Assocs.*,
 791 F. Supp. 2d 622 (N.D. Ill. 2011) .....................................................3

*Davis v. Diversified Consultants, Inc.*,
 36 F. Supp. 3d 217 (D. Mass 2014) .......................................................8

*Donohue v. Quick Collect Inc.*,
 592 F.3d 1027 (9th Cir. 2010)................................................................4

*Edwards v. Niagara Credit Sols. Inc.*,
 584 F.3d 1350 (11th Cir. 2009)..........................................................2, 5

*Feng Chen v. Golden Eagle Grp., Inc.*,
 No. C-07-4433 CRB (EMC), 2008 U.S. Dist. LEXIS 88797
 (N.D. Cal. Oct. 21, 2008) .......................................................................8

*Ghory v. Al-Lahham*,
 209 Cal. App. 3d 1487 (1989)................................................................8

*Gonzales v. Arrow Fin. Servs., LLC.*,
 660 F.3d 1055 (9th Cir. 2011)................................................................4

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
 559 U.S. 573 (2010) ...............................................................................5

*Kane v. Nat'l Action Fin. Servs., Inc.*,
 No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480
 (E.D. Mich. Nov. 7, 2011).....................................................................3

*Lardner v. Diversified Consultants, Inc.*,
 17 F. Supp. 3d 1215 (S.D. Fla. 2014) ....................................................7

*Lary v. Trinity Physician Financial & Ins Svcs.*,
 780 F.3d 1101 (11th Cir. 2015)..............................................................7

*Marisco v. NCO Fin. Sys., Inc.*,
 946 F. Supp. 2d 287 (E.D.N.Y. 2013)....................................................2

*Mey v. Got Warranty*,
   No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 84972
   (N.D.W Va. June 30, 2016) ............................................................................ 9, 10

*Olney v. Progressive Casual Insurance Company*,
   993 F. Supp. 2d 1220 (S.D. Cal. 2014) .................................................................. 6

*Reichert v. Nat'l Credit Sys.*,
   531 F.3d 1002 (9th Cir. 2008) ............................................................................... 4

*Riveria v. MAB Collections, Inc.*,
   682 F. Supp. 174 (W.D.N.Y. 1988) ........................................................................ 3

*Roylance v. ALG Real Estate Servs., Inc.*,
   No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930
   (N.D. Cal. Mar. 16, 2015) ...................................................................................... 8

*Sanchez v. Client Services, Inc.*,
   520 F. Supp. 2d 1149 (N.D. Cal. 2007) .................................................................. 2

*Spokeo v. Robins*,
   136 S. Ct. 1540 (May 16, 2016) ............................................................................. 9

*Zortman v. J.C. Christensen & Assocs.*,
   870 F. Supp. 2d 694 (D. Minn. 2012) ..................................................................... 2

**Statutes**

15 U.S. Code § 1692a(3) ................................................................................................. 2

15 U.S. Code § 1692b .................................................................................................... 5

15 U.S. Code § 1692b(2) ................................................................................................. 1

15 U.S. Code § 1692d ..................................................................................................... 3

15 U.S. Code § 1692d(6) ........................................................................................ 1, 2, 5

15 U.S. Code § 1692e .................................................................................................. 3, 4

15 U.S. Code § 1692k ..................................................................................................... 3

15 U.S. Code § 1692k(a) ................................................................................................. 3

15 U.S. Code § 1692k(c) ................................................................................................. 5

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act
   of 1991, Declaratory Ruling and Order*, 30 FCC Rcd. 7961 (2015) ........... 6

# I. Plaintiffs are entitled to partial summary judgment as a matter of law

Under Federal Rule of Civil Procedure Rule 56, Plaintiffs are entitled to partial summary judgment as to their FDCPA, Rosenthal Act, TCPA, and CIPA claims. Plaintiffs have presented strong and compelling evidence in support of these claims, for which there is no genuine dispute. Rather than raising a legitimate challenge to Plaintiffs' evidence, GCS presents a hodgepodge of excuses for its misconduct, many of which have already been asserted unsuccessfully in this case, or elsewhere. As summarized below,[1] none of GCS's purported "defenses" raise a genuine issue for trial as to any of Plaintiffs' claims.

## A. GCS has failed to raise a triable issue as to Plaintiffs' FDCPA claims[2]

GCS initially asserts that it was prevented from making the meaningful disclosure that it was a debt collector in its July 20, 2013 voicemail communication, as required under § 1692d(6), because such disclosure would be contrary to § 1692b(2)'s prohibition against disclosing a consumer's debt to a third-party. GCS Oppo., Dkt. No. 39 at 9-10. GCS's reliance on the so-called "rock and a hard place" defense underscores how desperate it is to manufacture a genuine triable issue as to Plaintiffs' FDCPA claim. Indeed, GSC's rock and a hard place defense has been "almost universally rejected" by courts across the country. *Zortman v. J.C. Christensen & Assocs.*, 870 F. Supp. 2d 694, 699 (D. Minn. 2012); *Marisco v. NCO Fin. Sys., Inc.*, 946 F. Supp. 2d 287, 293-94

---

[1] GCS asserts essentially the same arguments and defenses in its Opposition to Plaintiffs' Motion for Partial Summary Judgment ("GCS Oppo.") that were raised in its Motion for Summary Judgment, or Alternatively, for Partial Summary Judgment ("GCS's Motion for Summary Judgment"). *See* Dkt. Nos. 28 and 39. Plaintiffs have already filed their Opposition to GCS's Motion for Summary Judgment ("Plaintiffs' Opposition" or "Pltfs. Oppo.") and as such, have fully briefed GCS's defenses therein. *See* Dkt. No. 42. This Reply brief specifically incorporates by reference the arguments set forth in Plaintiffs' Opposition.

[2] All emphasis added and internal quotations and citations omitted unless otherwise stated.

(E.D.N.Y. 2013) (collecting cases). The FDCPA simply "does not guarantee a debt collector the right to leave answering machine messages." *Edwards v. Niagara Credit Sols. Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009).

It is telling that GCS completely ignores the recent decision in *Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560 (D.S.C. 2014), a recent case in which GCS was sued for leaving voicemails in circumstances almost identical to this case. *Id.* at 562 ("This message is intended for Kim Chatman. My name is Olivia [last name inaudible]. It is important for you to return my call. My number is 866-862-2789."). Like here, GCS argued that "following the majority rule" requiring it to identify itself when leaving a voicemail would place it in a "Catch-22 because of prohibitions on communications with third parties . . . ." *Id.* at 569. The court in *Chatman* rejected the argument and granted summary judgment to plaintiff for two reasons: **First**, GCS's messages stated that they were "intended for Kim Chatman." *Id.* at 569 n.15. "This language does not suggest an effort to speak with a third party in order to locate Chatman." *Id.* **Second**, GCS's argument "is nothing more than a creative attempt to avoid the clear mandates of Section 1692d(6) and 1692e(11)." *Id.* at 570. GCS's identical arguments should fare no better here.[3]

Next, GCS argues that Horowitz lacks standing to bring a § 1692d(6) claim because he is not a "consumer" as defined in § 1692a(3). For support, GCS relies on little more than dicta — a footnote in *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007). Notably however, most courts which have fully considered the issue have held that "protection of the FDCPA is not limited to the statutory definition of 'consumer' under Section 1692a(3) . . . ." *Conboy v. AT&T Universal Card Servs. Corp.*, 84 F. Supp. 2d

---

[3] As set forth in Plaintiffs' Opposition, the cases cited by GCS in support of its rock in a place argument are readily distinguishable. *See* Pltfs. Oppo. Dkt. 42 at 10.

492, 504 n.9 (S.D.N.Y. 2000). Indeed, the FDCPA "is broad enough to encompass 'any person' as that term is used in Section 1692k." *Id.* Section 1692k, which creates civil liability against debt collectors, provides "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ." 15 U.S. Code § 1692k(a). This "liability section is couched in the broadest possible language," and "[a]ny person who comes in contact with proscribed debt collection practices may bring a claim." *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988). Hamby plainly has standing under the FDCPA's broad statutory mandate.[4]

GCS also challenges Plaintiffs' spoofing-service claim by arguing that the California (760) telephone numbers that it left on Horowitz's caller ID during the July 2013 calls were not false and misleading misrepresentations under § 1692e. Again, GCS is wrong. It is undisputed that GCS used a spoofing service specifically for the purpose of making it look like it was calling from somewhere in Southern California, when in truth, it was calling from San Antonio, Texas.[5] GCS's 30(b)(6) representative confirmed this deceit when he testified REDACTED

---

[4] Importantly, the text of § 1692d itself further supports the proposition that even "non-consumers" have standing to assert violations of that section. Specifically, § 1692d provides "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Accordingly, courts have held that non-consumers have standing to bring FDCPA claims based on messages intended for someone else. *See D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622, 623-24 (N.D. Ill. 2011) (Voicemails that debt collector left on plaintiff's cellphone held actionable even though they were meant for somebody else); *Kane v. Nat'l Action Fin. Servs., Inc.,* No. 11-cv-11505, 2011 U.S. Dist. LEXIS 141480, at *13 (E.D. Mich. Nov. 7, 2011).

[5] *See* Plaintiffs' Separate Statement in Support of Motion for Partial Summary Judgment Nos. 21-22.

<span style="background-color:red;color:white">REDACTED</span>[6] GCS's use of a spoofing service to conceal the point of origin of its calls was clearly designed to "frustrate a consumer's ability to intelligently choose his or her response" to an attempted debt collection. *Donohue v. Quick Collect Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010); *see also*, *Gonzales v. Arrow Fin. Servs., LLC.*, 660 F.3d 1055, 1060-61 (9th Cir. 2011).[7] Accordingly, GCS's assertion that the (760) Numbers may have "belonged" to the company is simply immaterial to the analysis. In this case, Plaintiffs' § 1692e claim is not that GCS deceived them into believing that the (760) numbers belonged to another person or company other than GCS. Rather, Plaintiffs' claim is that GCS used a deceptive caller ID number "to trick Plaintiffs into thinking it was a local call to increase the probability of the call" — which was completely borne out by the evidence. Amended Complaint, Dkt. No. 6 at ¶ 27. As such, no triable issue exists as to Plaintiffs' spoofing-service claim.

Left with no other options, GCS attempts to lodge a desperate Hail Mary defense by arguing that its FDCPA violations were the result of bona fide error. Again, that defense has no application here. The bona fide error defense is an affirmative defense, for which the debt collector must show by a preponderance of the evidence that the violation: (1) was not intentional; (2) was a bona fide error; and (3) happened despite the maintenance of procedures reasonably adapted to avoid the error. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1005-06 (9th Cir. 2008). GCS cannot satisfy the first element since its conduct in this case was, by GCS's own admission, ***intentional***. Indeed, while GCS goes to great lengths to point out all the training and disciplinary measures it has in

---

[6] Declaration of Brett M. Weaver in Support of Plaintiffs' Motion for Partial Summary Judgment at Ex. D at 69:17-22.

[7] GCS wholly ignores clear Ninth Circuit test for deceptive practices liability under § 1692e set forth under *Gonzales* and *Donohue*, and instead relies on two out-of-circuit district court decisions that have no precedential value here.

place, the record demonstrates that GCS's policy for leaving voicemails actually compels its employees to violate the FDCPA's meaningful disclosure requirements and imposes discipline on them if they go against policy.

Specifically, GCS's policy for leaving voicemails is as follows. REDACTED

█████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████ █████████████████████
█████████████████████████████████████████████████
███████████████ █████████████████████████████████
███████████

In other words, GCS has intentionally decided to ignore the majority rule that § 1692b does not affect § 1692d(6)'s meaningful disclosure requirement for voicemails. *Edwards*, 584 F.3d at 1353 (debt collector not entitled to bona fide error defense because "[b]y its own admission, Niagara deliberately decided not to disclose in the messages it left that the caller was a debt collector. Its failure to disclose was intentional."). Put another way, GCS's bona fide error defense rests entirely on its misinterpretation of the law. But the Supreme Court made clear in *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573 (2010), that a debt collector cannot invoke the bona fide error defense to protect a mistaken interpretation of the law. *Id.* at 604-605 ("We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute."). *Baker v. G. C. Services Corp.*, 677 F.2d 775, 779-80 (9th Cir. 1982) ("Appellant only presented evidence that, at best, might

---

[8] Declaration of Brett M. Weaver in Support of Opposition to GCS's Motion for Summary Judgment at Ex. B.
[9] *Id.*

show it had been mistaken about the law.  This is insufficient by itself to support the bona fide error defense pursuant to 15 U.S.C. § 1692k.").

**B.    GCS has failed to raise a triable issue as to Plaintiffs' TCPA claims[10]**

GCS likewise fails to raise a genuine dispute as to Plaintiffs' TCPA claims.  As a threshold issue, Hamby plainly has standing to assert a TCPA claim.  This Court previously applied Judge Curiel's "instructive" reasoning in *Olney v. Progressive Casual Insurance Company*, 993 F. Supp. 2d 1220, 1225-26 (S.D. Cal. 2014), which held that a "called party" within the meaning of the FDCPA can include the phone's ***subscriber*** and the ***regular user***.  Because Hamby was "the nominal account holder of the phone number and the person whom Defendant GCS was trying to reach by calling the phone," and Horowitz was "the regular user of the phone," the Court correctly concluded "Plaintiff has sufficiently alleged standing at this stage in the litigation with respect to both Plaintiffs Hamby and Horowitz."  Order Denying Motion to Dismiss, Dkt. No. 13 at 17:14-16.[11]  Hamby's standing as the phone's subscriber (who lost at least one of his available 2,000 minutes), and Horowitz's standing as the phone's regular user (who had his privacy invaded by GCS's phone calls) therefore cannot be seriously disputed.

In addition, GCS incorrectly claims it did not use an ATDS because the LiveVox system required "human intervention" to make the calls to the 9515 Number.  As explained in Plaintiffs' moving papers, the FCC's July 2015 rule making decision backed away from the strict, but-for human intervention

---

[10] As the Court explained, "Rosenthal Act violations and FDCPA violations are viewed identically."  Order Denying Motion to Dismiss, Dkt. No. 13 at 15:24-25. Plaintiffs' analysis of the FDCPA claims therefore applies with equal force to the Rosenthal Act claims.

[11] The Court's ruling was confirmed just a month later when the FCC clarified that "'called party' is best understood to mean the subscriber to whom the dialed wireless number is assigned . . . and . . . a non-subscriber customary user . . . ." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 30 FCC Rcd. 7961, 8001 ¶ 74 (2015).

test promoted by GCS.  Under the FCC's 2015 ruling, whether some human intervention was involved in the call is not the test promoted by GCS.  Rather, the test is whether *enough* human intervention was involved.

The record here demonstrates that the calls to the 9515 Number were made with an autodialer with just minimal involvement from GCS personnel.  GCS used the LiveVox system which, in the words of its own representative, was an "automatic dialing system" that worked as follows:  (1) the 9515 Number was loaded into the QVC campaign during the early morning hours on July 16, 18, and 20, 2013; (2) the 9515 Number automatically appeared on the computer screens of the debt collectors placing the calls several hours later; (3) GCS's debt collectors pressed the "dial" button and then reviewed the file while waiting for the call to be picked up; and (4) REDACTED

In other words, the calls to Horowitz may have involved "human intervention," but only in the strictest sense of the word.  *See Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215, 1223 (S.D. Fla. 2014) (finding LiveVox "qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list.").  The LiveVox system plainly qualifies as an ATDS.

Furthermore, GCS relies on out-of-circuit case law to argue against the application of treble damages in this case based on GCS's claim that it lacked knowledge it was violating the TCPA.  GCS Oppo., Dkt. 39 at 20, *citing Lary v. Trinity Physician Financial & Ins Svcs.*, 780 F.3d 1101 (11th Cir. 2015).  As a threshold issue, the Eleventh Circuit decision cited by GCS is not binding on this Court.  And, even if a willfulness requirement is imposed, most courts interpret the term "willful or knowing" to simply mean the defendant "inten[ded]" to make the phone call and "not that it was aware that it was violating the statute." *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass 2014)

7

(collecting cases); *Roylance v. ALG Real Estate Servs., Inc.*, No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at *30-33 (N.D. Cal. Mar. 16, 2015). Here, there is no genuine dispute that GCS affirmatively intended to call the 9515 Number, satisfying any "willful or knowing" requirement for treble damages.

**C.    GCS has failed to raise a triable issue as to Horowitz's CIPA claims[12]**

GCS sinks to even lower depths by claiming that Horowitz's CIPA claims are barred by the doctrine of unclean hands. Aside from the lack of legal support for this equitable defense,[13] GCS offers no real evidence of Horowitz's supposed unclean hands, other than callously accusing Horowitz of impersonating Hamby. But, as GCS admits, Hamby authorized Horowitz (whom Hamby considered his ex-husband) to make the calls on Hamby's behalf. And although Hamby "conveniently" cannot recall precisely when he gave Horowitz his authorization, there is absolutely no evidence that Hamby had any problem with what Horowitz did.[14] Similarly, GCS's assertion that Hamby's actions were "unscrupulous" because he called GCS multiple times is also specious. Simply listening to the call recordings reveal this conclusion: Horowitz kept calling because GCS kept passing him off from one account representative to the other because it could not figure out why it called the 9515 Number in the first place. GCS's reliance on the unclean hands defense is unavailing.

---

[12]  Hamby is not asserting a claim under CIPA.

[13]  "Principles of equity cannot be used to avoid a statutory mandate." *Ghory v. Al-Lahham*, 209 Cal. App. 3d 1487, 1492 (1989). Accordingly, unclean hands is not a "viable defense" to a statutory violation. *See Feng Chen v. Golden Eagle Grp.*, Inc., No. C-07-4433 CRB (EMC), 2008 U.S. Dist. LEXIS 88797, at *5 (N.D. Cal. Oct. 21, 2008) (doubting the viability of unclean hands doctrine as a defense to a violation of California Labor).

[14]  GCS's righteous indignation about Horowitz's efforts in "an era of rampant identity theft and data breach" is totally self-serving and misplaced, given that its own employee voluntarily revealed to Horowitz the identity of another person who GCS was trying to contact about that person's delinquent Nissan Motor account.

GCS further repeats the common refrain made by debt collectors that CIPA's $5,000 in statutory damages per violation is "excessive and a violation of due process," but that argument is also without merit. As addressed in Plaintiffs' Opposition, the cases cited by GCS are readily distinguishable and are inapplicable to the CIPA claims asserted here. *See* Pltfs. Oppo., Dkt. No. 42 at 19-20.

**D. GCS has failed to raise a triable issue as to Plaintiffs' Article III standing**

Finally, GCS attacks Plaintiffs' Article III standing, citing the Supreme Court's decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (May 16, 2016). Plaintiffs have thoroughly examined the *Spokeo* decision and its application to their claims in their Opposition to GCS's Motion for Summary Judgment, and respectfully direct the Court to those papers for guidance on the issue. Moreover, the Court should consider and apply the very recent ruling in *Mey v. Got Warranty*, No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 84972 (N.D.W. Va. June 30, 2016), which involved a similar TCPA claim. The district court in *Mey* held that unwanted, computer-dialed telemarketing calls can cause ***both tangible and intangible concrete harm*** to consumers as required under *Spokeo*. *Id.* at *7-9.

In finding that plaintiff had satisfied Article III's injury-in-fact requirement, the court in *Mey* conducted a detailed analysis of *Spokeo*, as well as numerous TCPA cases. Notably, the court examined the portion of the *Spokeo* decision, cited extensively by GCS, which states that a "bare procedural violation, divorced from any concrete harm," does not satisfy the concreteness requirement. *Id.* at *6 (*citing Spokeo*, 136 S. Ct. at 1549). The court, however, went on to eviscerate GCS's "bare procedural violation" argument, finding that "[t]his observation has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on ***substantive prohibitions of actions directed toward consumers***." *Id.*

The court in *Mey* then proceeded to identify specific tangible and intangible harms giving rise to Article III standing. **First**, the court recognized that consumers with limited-minute cell plans (like Plaintiffs here) can suffer tangible concrete injury from unwanted, automated calls because such calls deplete their limited cell minutes, as well as deplete the cell phone's battery, causing them to incur the cost of electricity to recharge the phone. *Id.* at *8. **Second**, the court held that unwanted calls can cause concrete intangible injuries in the form of: "(1) invasion of privacy, (2) intrusion and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction." *Id.* Applying this analysis to the present case, there is no question that Plaintiffs have standing for their TCPA claims, as well as their FDCPA claims and Horowitz's CIPA claims, based on: (1) the direct tangible harm they suffered from the depletion of cell phone minutes and battery time; and (2) the concrete intangible harm caused by GCS's invasion of privacy (through GCS's unwanted calls and later unauthorized recording of Horowitz's calls), GCS's intrusion upon the capacity of the cell phone, and the waste of time and nuisance aspect of GCS's conduct (through GCS's failure to disclose its identity as a debt collector and use of a spoofing service).

## II. Conclusion

For all of the foregoing reasons, the Court should grant partial summary judgment as to Plaintiffs' FDCPA, Rosenthal Act, TCPA, and CIPA claims.

Respectfully Submitted,

July 8, 2016
By: */s/ Brett M. Weaver*
Brett M. Weaver (SBN 204715)
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856
*Attorney for Plaintiffs Nicholas Horowitz & Chad Hamby*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. LR 5.4(d). Any other counsel of record will be served by electronic mail, facsimile, and/or overnight delivery upon their appearance in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 8, 2016, at San Diego, California.

  */s/ Brett M. Weaver*
  BRETT M. WEAVER