1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

NICHOLAS HOROWITZ; and CHAD HAMBY,

12

Plaintiffs,

13

vs.

14

GC SERVICES LIMITED PARTNERSHIP,

15

16

Defendant.

Case No. 14cv2512-MMA RBB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;**

[Doc. No. 28]

**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT;**

17

[Doc. No. 34]

18

**GRANTING DEFENDANT'S MOTION TO FILE DOCUMENTS UNDER SEAL;**

19

[Doc. No. 29]

20

21

**GRANTING PLAINTIFF'S MOTIONS TO FILE DOCUMENTS UNDER SEAL;**

22

[Doc. Nos. 31, 40, 44]

23

**VACATING THE PRETRIAL CONFERENCE AND TRIAL DATES**

24

25

26

Defendant GC Services Limited Partnership ("Defendant" or "GCS") moves for

27

summary judgment in its favor on all of Plaintiffs' claims.  Doc. No. 28.  Plaintiffs

1    Nicholas Horowitz and Chad Hamby move for partial summary judgment.  Doc. No. 34.
2    The Court found this matter suitable for determination on the papers and without oral
3    argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons stated below, the Court
4    **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary
5    judgment, Doc. No. 28, and **GRANTS IN PART AND DENIES IN PART** Plaintiffs'
6    motion for partial summary judgment, Doc. No. 34.

7                                    BACKGROUND[1]

8         In December 2012, Plaintiff Hamby purchased a computer from QVC on an
9    installment plan as a gift for his brother.  Doc. No. 42-2.  Plaintiff Horowitz was
10   uninvolved in the purchase.  To complete the purchase, Plaintiff Hamby gave QVC his
11   billing and contact information, including a phone number ending in 9515 ("the 9515
12   number").  At the time of the purchase, the 9515 number was connected to a landline
13   telephone that both Plaintiffs Hamby and Horowitz used at the residence they both
14   resided in.  Plaintiffs were not married, but had had been in a relationship up until
15   approximately February or March 2013.  After Plaintiffs separated, Plaintiff Horowitz
16   "agreed to pay for the phone bills for the couple's phone lines for one year after the
17   separation."  *See* Doc. No. 42-2, ¶ 6.  In March 2013, one of the Plaintiffs requested that
18   the 9515 number be converted into a wireless line.[2]  At that time, the account
19   corresponding to the 9515 number was in Plaintiff Hamby's name, but Plaintiff Hamby
20   did not have access to or use the 9515 number after March 2013.  *See* Doc. No. 42-2, ¶
21   10.  Plaintiff Hamby was unable to and did not access any voicemails left for the 9515
22   number at any time after March 2013.  Beginning in March 2013, the 9515 number was
23   used exclusively by Plaintiff Horowitz.  In order to check the voicemails left for the 9515
24   number, Plaintiff Horowitz would use a third-party visual voicemail service called

---

[1] The following facts are undisputed unless stated otherwise.
[2] Defendant disputes whether the landline was converted into a wireless line.  *See* Doc. No. 39-2, ¶ 9; Doc. No. 42-2, ¶ 8.

YouMail, which would send Plaintiff Horowitz an email with the audio file of the voicemail.

In July 2013, QVC provided GCS with Plaintiff Hamby's outstanding account balance for collection as well as the 9515 number. Prior to calling the 9515 number, GCS ran the phone number "against a database of all known cell phone numbers including wireless numbers ported from landlines ('cell phone scrub')." *See* Doc. No. 42-2, ¶ 16. The GCS cell phone number database is updated daily through a file from Interactive Marketing Solutions. On July 20, 2013, at 5:29 a.m., a supervisor at GCS uploaded the 9515 number into the QVC "campaign" for that day on LiveVox, a dialing system. *See* Doc. No. 39-2, ¶¶ 14, 15.[3] That same day, GCS ran the 9515 number through a cell phone scrub, which did not report that the number was within the database of known cell phone numbers. A GCS employee, Ruby Cisneros, dialed the 9515 number in LiveVox's "preview mode." *See* Doc. No. 42-2, ¶ 29; Doc. No. 39-2, ¶ 14. "In a preview calling campaign, manual human intervention is required to launch the call," as "GCS representatives are presented with numbers to dial, 'preview' the number, and then are given the option to either call the number or skip the number." *See* Doc. No. 42-2, ¶ 20. When Cisneros dialed the 9515 number in preview mode on July 20, 2013, she received an automated message stating, "I'm afraid we are unable to answer your call right now, but please leave a message and someone will get back to you as soon as possible." *See* Doc. No. 42-2, ¶ 30. Then, Cisneros left a voicemail stating, "Hello. This message is for Chad Hamby. My name is Ruby Cisneros. I'd appreciate it if you can return my phone call, and you can reach me at (866) 862-2789."[4] Doc. No. 39-2, ¶ 19; Doc. No. 34-2, Exh. O.

---

[3] Unless noted otherwise, all citations to paragraphs in Doc. No. 39-2 refer to Plaintiffs' list of undisputed material facts and Defendant's corresponding responses, and not Defendant's list of additional undisputed material facts.

[4] Although Defendant purportedly left two other voicemails at the 9515 number prior to July 20, 2013, the Court previously held that Plaintiffs were barred by the statute of limitations from bringing FDCPA claims based on earlier voicemails. *See* Doc. No. 13. Also, based on the briefing on the pending motions for summary judgment,

1    When Cisneros called the 9515 number, the caller ID did not display a caller name,
2    but displayed only the phone number (760) 979-5306 ("the 760 number"), which
3    belonged to GCS.  Area code 760 corresponds to Southern California.  "The July 20
4    voicemail originated from GCS's San Antonio call center."  Doc. No. 39-2, ¶ 21.  GCS
5    did not actively block its name on the caller ID; rather, LiveVox generally displays
6    names in the caller ID as blank.  The voicemail was left in accordance with GCS policy.
7    Plaintiff Horowitz, and not Plaintiff Hamby, received the July 20 voicemail.  Due to the
8    voicemail, Plaintiff Horowitz lost one of the 2,000 minutes allotted pursuant to the phone
9    plan.[5]

10    On July 22, 2013, Plaintiff Horowitz called GCS at the 760 number and identified
11    himself as Plaintiff Hamby.  *See* Doc. No. 42-2.  During the call, Plaintiff Horowitz
12    "asked for information on Hamby's account, including the identity of the creditor,
13    amount owed, [] written communications sent to Hamby," and "information on GCS'
14    phone systems, including its use of cell phone scrubbers, caller ID display systems, the
15    identities of the owners of GCS, and then threatened to file a lawsuit against GCS at the
16    end of the call."  *See* Doc. No. 42-2, ¶ 36.  Approximately one year later, on July 16,
17    2014, Plaintiff Horowitz called GCS three times.  During the second call, Plaintiff
18    Horowitz identified himself as Plaintiff Hamby, and initially spoke with Kenneth Wallace
19    who later transferred the call to Nancy Zamora.  "GCS made an audio recording of the
20    call, but no call recording disclosure was provided prior to the transfer."  Doc. No. 42-2,
21    ¶ 38.  GCS does not have a recording of the call after it was transferred to Zamora.
22    During the third call, Plaintiff Horowitz again identified himself as Plaintiff Hamby, and
23    spoke with Rosa Botello.  GCS recorded the call, but did not disclose that it was doing so.
24    On July 18, 2014, Plaintiff Horowitz called GCS four times "to obtain facts for filing this

25
26    Plaintiffs appear to limit all of their claims to the July 20, 2013 voicemail.  *See* Doc. No. 41, at p. 7:14–26
      (referring only to the July 20 voicemail with regard to the TCPA claim).
27    [5] Defendant disputes that Plaintiff Hamby lost any minutes because Hamby did not have access to the 9515 line
      nor was he financially responsible for the plan.

lawsuit." Doc. No. 42-2, ¶ 40. In his first call, Plaintiff Horowitz identified himself as Plaintiff Hamby and spoke with Julian Coney, but the call disconnected quickly. GCS recorded the call, but did not provide a disclosure regarding its recording. GCS does not have an audio recording of Plaintiff Horowitz's second call on July 18, 2014. In Plaintiff Horowitz's third call that day, Plaintiff identified himself as Plaintiff Hamby and spoke with Elizabeth Rodriguez. GCS recorded that call without informing Plaintiff Horowitz. In the fourth call, Plaintiff Horowitz spoke with Eiphany Golston, but GCS does not have an audio recording of that conversation. During that same call, Plaintiff Horowitz was transferred to Deborah Guerra. GCS recorded Plaintiff's conversation with Guerra, but did not inform him of the recording.

Regarding all 2014 calls from Plaintiff Horowitz to GCS for which there are recordings, the recordings began before either Plaintiff or representatives of GCS began speaking. *See* Doc. No. 39-2, ¶ 29. Pursuant to GCS policy, GCS representatives were supposed to inform Plaintiff Horowitz that the call was going to be recorded during the "initial greeting portion" of the call. *See* Doc. No. 39-2, ¶ 29. For all calls for which there are recordings, GCS's representatives either did not inform Plaintiff Horowitz that the calls were being recorded at all, or only informed him of the recordings when Horowitz asked whether the call was being recorded at the end of the conversation. *See* Doc. No. 39-2, ¶ 31.

On July 21, 2014, Plaintiffs commenced this action in the Superior Court of the State of California, County of San Diego, North County. On October 21, 2014, Defendant GCS removed the action to this Court. Plaintiffs allege Defendant violated: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (2) the Rosenthal Act, California Civil Code section 1788 *et seq.*; (3) the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq.*; and (4) the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631 *et seq.* The parties have filed cross-motions for summary judgment regarding Plaintiffs' claims. *See* Doc. Nos. 28, 34.

**LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it could affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), *cert. denied*, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).

**DISCUSSION**

**A.    Motion to File Documents Under Seal**

Defendant moves to file Exhibits 1, 4, 5, and 7 to its motion for summary judgment under seal pursuant to the protective order (Doc. No. 24) issued by the assigned magistrate judge.  *See* Doc. No. 29.  Defendant contends that these exhibits should be filed under seal because they include "confidential, proprietary, and/or commercially sensitive business information" regarding GCS and other non-parties, and contain personal financial information regarding Plaintiff Hamby.  *See* Doc. No. 29.

Also pursuant to the protective order, Plaintiffs move to file under seal an unredacted version of their motion for summary judgment, as well as an unredacted

- 6 -

14cv2512

version of Brett M. Weaver's declaration in support of the motion for summary judgment, accompanying Exhibits D, F, L, and X, an unredacted version of their separate statement of undisputed facts. *See* Doc. No. 31. Plaintiffs also move to file under seal unredacted versions of their opposition to Defendant's motion for summary judgment, Exhibits A and B to Brett M. Weaver's declaration in opposition to Defendant's motion for summary judgment, as well as an unredacted version of their reply in support of their motion for summary judgment. Doc. Nos. 40, 44. Plaintiffs state that these pleadings quote deposition testimony and refer to exhibits that Defendant has marked as confidential for the reasons stated above.

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 n.7 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). Where a party moves to file under seal a motion or documents attached to a motion, the focus is on the underlying motion and whether it is "more than tangentially related to the underlying cause of action." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016). Where the motion is more than tangentially related to the merits, the movant must show compelling reasons for overcoming the presumption in favor of public access. *Id.* at 1096–97. Otherwise, a party need only show good cause. *Id.*

Here, the parties' motions for summary judgment are more than tangentially related to the merits of Plaintiffs' claims. After reviewing the parties' filings, the Court finds the parties have demonstrated compelling reasons for overcoming the presumption in favor of public access. *See Center for Auto Safety*, 809 F.3d at 1096–99. Accordingly, the Court **GRANTS** the parties' motions to file documents under seal. *See* Doc. Nos. 29, 31, 40, 44.

**B.   Defendant's Evidentiary Objections**

Defendant makes evidentiary objections to parts of the declaration submitted by Brett M. Weaver in support of Plaintiffs' motion for partial summary judgment, as well as several of the accompanying exhibits.  Doc. No. 39-1.  Because the Court does not rely on any of the evidence to which Defendant objects, as illustrated below, the Court **OVERRULES** Defendant's objections as moot.

**C.   Article III Standing**

Defendant argues the Court lacks subject matter jurisdiction over this case because both Plaintiffs lack Article III standing.  To have constitutional standing, a plaintiff must demonstrate an (1) injury in fact, (2) which is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Defendants rely almost exclusively on the United States Supreme Court's recent opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, *as revised* (May 24, 2016) to argue that neither plaintiff has suffered a sufficiently concrete injury to satisfy the Article III injury-in-fact requirement.  In *Spokeo*, the plaintiff alleged Spokeo, Inc. ("Spokeo"), which is a "people search engine," violated the Fair Credit Reporting Act of 1970, 15 U.S.C. § 1681 *et seq.* ("FCRA") in a putative class action.  *Id.* at 1544.  Some of the information that Spokeo gathered and disseminated in response to searches of the plaintiff's name was inaccurate.  *Id.*  Specifically, the plaintiff alleged that the Spokeo profile regarding him falsely stated that "he is married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," which harmed his employment prospects.  *Id.* at 1546.  The district court dismissed the complaint for lack of Article III standing, but the Ninth Circuit reversed, noting that the plaintiff had alleged that Spokeo had violated his statutory rights and not just those of others similarly situated, and that the plaintiff's personal interests in how the defendant handled his credit information were individualized.  *Id.* at 1544.  Thus, the Ninth Circuit concluded the plaintiff had alleged an injury in fact.  *Id.* at 1545.  The Supreme Court

concluded that the Ninth Circuit's "analysis was incomplete" because the Ninth Circuit only addressed whether the plaintiff had alleged a sufficiently particularized injury, but not also whether the alleged injury was concrete. *Id.* The Supreme Court vacated the Ninth Circuit's decision and remanded for consideration of the concreteness of the plaintiff's injury. *Id.*

Regarding the injury-in-fact prerequisite, the Supreme Court explained that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48. Rather, a plaintiff must have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

Regarding concreteness, the Court emphasized that an injury must be real—it must "actually exist," and not be abstract. *Spokeo*, 136 S.Ct. at 1548. However, intangible injuries may also be concrete. *Id.* at 1549. The Supreme Court noted that in determining whether an intangible injury is sufficiently concrete, it is helpful to look to historical practice as well as whether Congress has identified the injury as cognizable. *Id.* However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The Court stated that the plaintiff in *Spokeo* could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III" because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1549–50. But, "[t]his does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Id.* at 1549. "For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." *Id.* (providing slander per se as an

example).  Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact."  *Id.*  "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original).  Lastly, the Supreme Court gave two examples of violations of the FCRA's procedural requirements that are unlikely to result in any harm or present a material risk of harm: (1) where "a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information" and the information is accurate; and (2) where a consumer reporting agency reports an inaccurate zip code because it is "difficult to imagine how [that], without more, could work any concrete harm."  *Id.* at 1550.  The Supreme Court remanded for the Ninth Circuit's consideration of "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement," as one of Congress's purposes in enacting the FCRA was to put in place procedures designed to decrease the risk of dissemination of false information.  *Id.*

Here, as an initial matter, Plaintiff Horowitz does not only allege a bare procedural violation, but rather alleges he suffered a concrete injury in that he received a voicemail at the phone number that he exclusively used, spent time returning the phone call, and lost one of the available minutes on the phone plan that he exclusively paid for.  Also, GCS recorded several of Plaintiff Horowitz's calls without disclosing that it was doing so.  Because Plaintiff Horowitz alleges claims based on alleged omissions in GCS's voicemail message, GCS's alleged use of an automated dialing system in making the call to leave the voicemail, and the recording of Horowitz's calls, Horowitz has sufficiently demonstrated constitutional standing to bring all of the causes of action he asserts—those provided for by the FDCPA and Rosenthal Act, the TCPA, and the CIPA.

Regarding Plaintiff Hamby, the issue of constitutional standing is a closer call, but under this Circuit's precedent, Plaintiff Hamby has constitutional standing to assert some violations of the FDCPA—namely, those violations based on Defendant's alleged failure

1  to disclose its name and that it was attempting to collect a debt, and for using misleading

2  means to attempt to collect a debt.  *See* 15 U.S.C. §§ 1692d(6), 1692e(11), and

3  1692e(10).  Regarding those FDCPA claims, the Court finds *Tourgeman v. Collins*

4  *Financial Services, Inc.*, 755 F.3d 1109 (9th Cir. 2014) instructive.  In *Tourgeman*, the

5  plaintiff had purchased a computer to be shipped to his parents' home in California,

6  financing the purchase through Dell Financial Services ("Dell").  *Id.* at 1112–13.  Dell's

7  records indicated that the plaintiff had an outstanding debt, which was transferred for

8  collection to Collins Financial Services ("Collins").  *Id.* at 1113.  Collins's collection

9  agency sent allegedly misleading letters to the plaintiff's parents' home.  Collins referred

10  the matter to a law firm as well, which sent another letter to the parents' home.  *Id.*  Then,

11  the law firm filed a lawsuit against the plaintiff in California superior court.  *Id.*  During

12  that litigation, the plaintiff learned of the letters.  *Id.*  In response, the plaintiff sued

13  Collins and the law firm ("the defendants") in federal court alleging violations of the

14  FDCPA.  *Id.*  The district court granted summary judgment in the defendants' favor.  *Id.*

15  The Ninth Circuit reversed and remanded the case.  *Id.* at 1112.

16        On appeal, the defendants argued that the plaintiff lacked both Article III and

17  statutory standing to sue for violations of the FDCPA based on the letters because the

18  plaintiff admitted he did not receive the letters when they were sent.  *Id.* at 1114.  Thus,

19  the defendants argued that "consumers who never receive the offending communication

20  have suffered no injury in fact."  *Id.*  The Ninth Circuit stated that a plaintiff need not

21  suffer pecuniary or emotional harm to have suffered an injury in fact.  As an example, the

22  Ninth Circuit pointed to a United States Supreme Court opinion holding that a plaintiff

23  who poses as an apartment hunter seeking to "ferret out violations" of the Fair Housing

24  Act ("FHA") has standing to sue for violations of the FHA based on a defendant's false

25  statement that no apartments are available for the plaintiff.  *Id.* at 1115 (citing *Havens*

26  *Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982)).  The Court framed the

27  plaintiff's injury as an injury to her "statutorily created right to truthful housing

information" and was a cognizable injury in fact "regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex." *Id.* "The tester plaintiff possessed standing not because she had been 'deprived . . . of the benefits that result from living in an integrated community' but simply because her 'statutorily created right to truthful housing information' had been infringed." *Id.* (quoting *Havens*, 455 U.S. at 374–75) (internal citation omitted). The Ninth Circuit then cited to several other situations in which courts have found Article III standing despite the absence of pecuniary or emotional damages where the plaintiffs alleged "violation[s] of the rights conferred by statute." *Id.* at 1116.

Based on the facts of *Tourgeman*, the Ninth Circuit ultimately concluded:

> Although Tourgeman could not have suffered any pecuniary loss or mental distress as the result of a letter that he did not encounter until months after it was sent—when related litigation was already underway—the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right—like those rights at issue in *Havens, Robins,* and the other cases that we have noted—constitutes a cognizable injury under Article III. [. . .] We conclude, therefore, that Tourgeman has constitutional standing.

*Id.*

Under *Tourgeman*, Plaintiff Hamby undoubtedly has constitutional standing to allege violations of the FDCPA based on Defendant's alleged failure to disclose both the name of the collection agency and that the caller was attempting to collect a debt, and for using allegedly deceptive means in an attempt to collect an alleged debt. However, the Court must consider the effects of the Supreme Court's subsequent decision in *Spokeo*. The Court concludes that the *Spokeo* decision has limited instructive value in this case, and is not at odds with *Tourgeman* for the following reasons. Significantly, the *Spokeo*

1   decision addressed the FCRA, and not the statute at issue here, the FDCPA.  Further, the

2   *Spokeo* majority opinion does not actually resolve whether the plaintiff in that case

3   alleged a sufficiently concrete injury, but instead remanded the case to the Ninth Circuit

4   for its determination.  *Spokeo*, 136 S.Ct. at 1544 ("This Court takes no position on the

5   correctness of the Ninth Circuit's ultimate conclusion [that the plaintiff sufficiently

6   alleged Article III standing].").

7          Also, as the Court interprets *Spokeo*, the Supreme Court did not purport to alter the

8   law regarding standing, but rather to reiterate and clarify it, as evidenced by the Supreme

9   Court's citation to its prior opinions regarding standing.  *See id.* at 1550 (citing two

10  previous Supreme Court decisions for the proposition that deprivation of a procedural

11  right without harm to some concrete interest is insufficient to confer Article III standing).

12  In other words, it is not a new requirement that a plaintiff must demonstrate a concrete

13  injury in the context of an alleged statutory violation; what *Spokeo* clarified is that

14  sometimes a procedural violation of a statute constitutes a concrete injury, and sometimes

15  it does not.  *See id.* at 1549 ("[T]he violation of a procedural right granted by statute can

16  be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff

17  in such a case need not allege any *additional* harm beyond the one Congress has

18  identified.").  Unfortunately, the *Spokeo* Court only concluded that a procedural violation

19  of the FCRA is insufficient, and was understandably silent as to procedural violations of

20  other statutes not at issue in that case, such as the FDCPA.  Accordingly, *Spokeo* does not

21  affect the Ninth Circuit's conclusion in *Tourgeman* that the plaintiff's assertion of

22  procedural violations of the FDCPA amounted to a concrete injury.[6]  In *Tourgeman*, the

23  Ninth Circuit framed the plaintiff's asserted injury in broad terms as "the violation of [the

24  plaintiff's] right not to be the target of misleading debt collection communications."

25

26  [6] The Ninth Circuit explicitly concluded that the plaintiff had demonstrated a cognizable injury under Article III,
     and in order for an injury to be cognizable, it must be concrete.  *See Tourgeman*, 755 F.3d at 1116.  Thus, despite
27  that the Ninth Circuit did not explicitly state that the injury was concrete, the Court infers that it made the
     prerequisite finding.

*Tourgeman*, 755 F.3d at 1116.  Plaintiff Hamby—being similarly situated to the *Tourgeman* plaintiff, as alleged debtors and the targets of debt collectors' communications—clearly enjoys the same right, which he alleges was violated.

It is also noteworthy that, even assuming *Spokeo* overruled *Tourgeman*, *Spokeo* stated that even a risk of real harm caused by a procedural violation may constitute a concrete injury.  In line with *Spokeo*, in enacting the FDCPA, Congress plainly sought to implement procedures that would decrease the risk that debt collectors would use deceptive means in attempting to collect debts and, similarly, decrease the risk that consumers would be so deceived, putting them in positions whereby they are unable to make fair decisions regarding how to respond to communications from debt collectors. *See Tourgeman*, 755 F.3d at 1121 ("By ensuring that consumers are fully and truthfully apprised of the facts and of their rights, the FDCPA enables them 'to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.'"); *see also Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) ("[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors[.]").  Here, Plaintiff Hamby was the target of Defendant's debt collection efforts, which Plaintiffs contend were misleading and/or otherwise violated the FDCPA.  When Defendant left the allegedly offending voicemail at the 9515 number, which had been provided to Defendant as Plaintiff Hamby's phone number, and stated that the message was for Hamby, Defendant created a material risk of real harm—a risk that Hamby would be informed of the existence of and content of the allegedly illegal voicemail, and be deceived by it.  In sum, Plaintiff Hamby sufficiently demonstrates Article III standing to sue for FDCPA sections 1692d(6), 1692e(11), and 1692e(10) and the Rosenthal Act, for

purported violations of those FDCPA provisions.[7]  *See* 15 U.S.C. §§ 1692d(6), 1692e(11), 1692e(10); Cal. Civ. Code § 1788.17.

In addition to those FDCPA claims discussed above, Plaintiff Hamby claims Defendant violated the FDCPA's provision prohibiting a debt collector from "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication" and thus, the Rosenthal Act as well.  *See* 15 U.S.C. § 1692f(5); Cal. Civ. Code § 1788.17.  Unlike the FDCPA provisions discussed above which prohibit deceptive debt collection practices, section 1692f(5) specifically contemplates an injury in the form of charges.  It is undisputed that Plaintiff Hamby did not use the 9515 number and was not financially responsible for the corresponding phone plan.  Therefore, despite that Plaintiffs both used the phone plan, *i.e.*, the 2,000 allotted minutes, and thus Plaintiff Hamby lost the ability to use one of the allotted minutes on the plan, it is undisputed that he did not pay for those minutes, so he cannot be said to have incurred charges.  *See* Doc. No. 42-2, ¶ 47; *see also Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 947 (C.D. Cal. 2015) (stating, regarding a California Unfair Competition Law claim that "[i]f unwanted telemarketing calls deplete some of these allocated minutes, the holder has lost something of *economic* value") (emphasis added).  Accordingly, Plaintiff Hamby does not demonstrate a concrete injury as contemplated by section 1692f(5) and does not have Article III standing to sue for a violation of that section.  The Court thus **GRANTS** Defendant's motion for summary judgment as to Plaintiff Hamby's section 1692f(5) claim.

Lastly, Plaintiff Hamby asserts a violation of the TCPA.[8]  However, in enacting the TCPA, Congress sought to protect people from unsolicited, automated phone calls because they cause a nuisance and constitute invasions of privacy.  *Cabiness v. Educ.*

[7] The Rosenthal Act states that debt collectors must comply with the FDCPA, provisions 1692b to 1692j, which encompasses all of Plaintiffs' FDCPA causes of action in this case.  Accordingly, the Rosenthal Act claims rise and fall with the FDCPA claims.

[8] Plaintiff Hamby is not asserting a claim under the CIPA.  *See* Doc. No. 41, p. 17, n.9.

1   *Fin. Sols.*, LLC, No. 16-CV-01109-JST, 2016 WL 5791411, at \*6 (N.D. Cal. Sept. 1,
2   2016).  Plaintiff Hamby cannot be said to have suffered an injury as contemplated by the
3   TCPA because Plaintiff Hamby did not receive the offending voicemail, nor was Plaintiff
4   Hamby financially responsible for the plan governing the 9515 number.
5       Further, even were the Court to find Plaintiff Hamby has constitutional standing to
6   assert a violation of the TCPA, Plaintiff Hamby would not have statutory standing
7   because the TCPA contemplates liability to the "called party" or the "recipient" of
8   offending calls.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  "The only logical interpretation of
9   'called party' as used in this section is the 'actual recipient.'"  *Olney v. Progressive Cas.*
10  *Ins. Co.*, 993 F. Supp. 2d 1220, 1224 (S.D. Cal. 2014).  "Because section 227(d)
11  unambiguously uses 'called party' to mean the actual recipient, 'called party' should
12  carry the same meaning in other provisions.  *Id.* (citing *Breslow v. Wells Fargo Bank,*
13  *N.A.,* 857 F.Supp.2d 1316, 1321 (S.D.Fla. 2012) ("The use of 'called party' to
14  unambiguously refer to the actual recipient in another section of the TCPA is compelling
15  evidence that the term carries the same meaning in other provisions.")).  This
16  interpretation also comports with the Federal Communications Commission's ("FCC")
17  Declaratory Ruling and Order of July 10, 2015, which stated that a "'called party' is best
18  understood to mean the subscriber to whom the dialed wireless number is assigned
19  because the subscriber is 'charged for the call' and, [. . .] a non-subscriber customary
20  user, [as] the person whose privacy is interrupted by unwanted calls."  *See In the Matter*
21  *of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.
22  Rcd. 7961, 8001 (2015) (hereinafter "2015 FCC Order").  Plaintiff Hamby was neither
23  charged for the voicemail nor a customary user of the 9515 number.  For the foregoing
24  reasons, Plaintiff Hamby lacks both Article III and statutory standing to sue for a
25  violation of the TCPA, and the Court **GRANTS** Defendant's motion for summary
26  judgment as to Plaintiff Hamby's TCPA claim.
27  //

**D.    Fair Debt Collection Practices Act Claims**

To prevail on a FDCPA claim, the plaintiff must show: (1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant attempting to collect the debt qualifies as a "debt collector," and (3) the defendant committed some act or omission in violation of the FDCPA.  *Monreal v. GMAC Mortg., LLC*, 948 F. Supp. 2d 1069, 1084 (S.D. Cal. 2013); *see also Gutierrez v. State Farm Mut. Ins. Co.* (*Gutierrez I*), 2012 WL 398828, at *5 (N.D. Cal. Feb. 7, 2012); *Janti v. Encore Capital Grp., Inc.*, 2010 WL 3058260, at *4 (S.D. Cal. Aug. 3, 2010).  Plaintiffs allege that Defendant violated the following FDCPA provisions: (i) § 1692d(6) for failing to disclose the name of the collection agency, (ii) § 1692e(11) for failing to disclose that the debt collector is attempting to collect a debt, (iii) § 1692e(10) for using deceptive means in an attempt to collect an alleged debt, and (iv) § 1692f(5) for causing charges to be made to the cell phone bill.  The Court discusses each alleged violation in turn.

**i.    Section 1692d(6)**

First, Plaintiffs allege GCS violated 15 U.S.C. § 1692d(6) by omitting GCS's name in the voicemail message left on July 20, 2013.  Section 1692d(6) states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [. . .]
>
> (6)    Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).  Section 1692b governs a debt collector's communications "with any person other than the consumer for the purpose of acquiring location information about the consumer."  *See* 15 U.S.C. § 1692b.

1   Defendant argues Plaintiff Horowitz lacks statutory standing to bring this claim

2   because he is a non-consumer.  *See* Doc. No. 28.  Under section 1692a(3), "[t]he term

3   'consumer' means any natural person obligated or allegedly obligated to pay any debt."

4   *See* 15 U.S.C. § 1692a(3).  It is undisputed that only Plaintiff Hamby was allegedly liable

5   for the debt owed to QVC and is accordingly the "consumer," as defined by section

6   1692a(3).  However, section 1692d does not limit statutory standing to consumers.

7   Rather, section 1692d states that a debt collector must not engage in the prohibited

8   conduct as to "any person."  *See* 15 U.S.C. § 1692d.  Further, section 1692b does not

9   create an exception here.  Plaintiffs do not allege a violation of section 1692b and section

10   1692b is not otherwise applicable to this case because, as evidenced by the July 20

11   voicemail, GCS did not call the 9515 number and leave a message in order to reach a

12   person "other than the consumer for the purpose of acquiring location information about

13   the consumer."  *See* 15 U.S.C. § 1692b.  In the July 20 voicemail, the GCS representative

14   stated that the voicemail was meant for Chad Hamby, the consumer, and thus the

15   representative did not leave the voicemail in order to speak with Plaintiff Horowitz

16   regarding Plaintiff Hamby's whereabouts.  Accordingly, GCS's call does not fall within

17   the exception provided by section 1692b.

18   Further, the cases that Defendant cites in support of its argument are unpersuasive

19   for the proposition that Plaintiff Horowitz cannot sue under 1692d(6).  For example, in

20   *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007), the court found a

21   plaintiff who received a phone call regarding a debt her mother allegedly owed lacked

22   statutory standing under the FDCPA, but it is silent as to what provisions of the FDCPA

23   the court was referring to.  Further, the court based its determination on the fact that the

24   plaintiff did not fall within the definition of "consumer" in section 1692a(3).  *Id.* at 1155,

25   n.3.  While the ability to sue under some provisions of the FDCPA may be dependent on

26   one's status as a consumer, the plain language of section 1692d does not limit liability to

27   consumers.  *See United States v. Am. Trucking Ass'ns, Inc.,* 310 U.S. 534, 543 (1940)

1    (stating there is "no more persuasive evidence of the purpose of a statute than the words

2    by which the legislature undertook to give expression to its wishes").  Also, in *Sclafani v.*

3    *BC Servs., Inc.*, No. 10-61360-CIV-HUCK, 2010 WL 4116471 (S.D. Fla. Oct. 18, 2010)

4    and *Worsham v. Accounts Receivable Mgmt., Inc.*, 497 F. App'x 274 (4th Cir. 2012), the

5    courts found the defendants did not violate section 1692d(6) because the subject phone

6    calls fell within the exception under section 1692b.  *Sclafani*, 2010 WL 4116471 at *2;

7    *Worsham*, 497 F. App'x at 277–278.  As discussed above, Defendant's voicemail does

8    not fall within that exception.  It is also noteworthy that the *Sclafani* court, although

9    ultimately concluding that the section 1692b exception applied, stated, "[s]ection 1692d

10   does not require that the person alleging a violation be a consumer."  *Id.*  Thus, the Court

11   is satisfied that Plaintiff Horowitz's status as a non-consumer does not preclude him from

12   asserting a cause of action under section 1692d(6).

13        Defendant also argues the FDCPA does not provide a right to "meaningful

14   disclosure of the caller's identity" to Plaintiff Horowitz, as a non-consumer, because if

15   debt collectors were required to disclose their identity to third parties, they would

16   necessarily violate section 1692c(b).  *See* Doc. No. 28.  Section 1692c(b) restricts debt

17   collection agencies from communicating with third parties in connection with the

18   collection of any debt, except as provided in section 1692b.  *See* 15 U.S.C. § 1692c(b).

19   In *Fashakin*, the court stated that it was sympathetic to the defendant's argument that "a

20   debt collector confronted by a third-party gatekeeper [. . .] while attempting to contact the

21   debtor, cannot both provide meaningful disclosure pursuant to § 1692d(6) and comply

22   with the requirements of § 1692c(b)."  *Fashakin v. Nextel Commc'ns*, No. 05-CV-3080

23   (RRM), 2009 WL 790350 at *7 (E.D.N.Y. Mar. 25, 2009).  The court "harmonized" the

24   two provisions by recognizing that (1) "the meaningful disclosure requirements of §

25   1692d(6) only apply when the telephone calls being placed are made directly to the

26   consumer" or a party whom the consumer has consented to receiving communication,

27   and "(2) that debt collectors, who, in attempting to reach a debtor, instead speak with a . .

. receptionist or . . . third-party, may not make a meaningful disclosure of identity to this third-party without running afoul of [section 1692c(b)]." *Id.* at *8.

However, it does not follow that Defendant had to either leave a voicemail lacking the disclosures required by section 1692d(6) or leave a voicemail that violates section 1692c(b).  As the Eleventh Circuit as well as other courts have noted in relatively similar circumstances, "even if Niagara's assumption [that leaving required disclosures on voicemails would violate 1692c(b) if heard by third parties] is correct, the answer is that the Act does not guarantee a debt collector the right to leave answering machine messages."  *See Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1354 (11th Cir. 2009); *Sclafani*, 2010 WL 4116471 at *3 (allowing a third party non-consumer to sue for a violation of section 1692d(6)) ("If BC Services could not leave voice messages that simultaneously complied with the multiple applicable provisions of FDCPA, it should not have left the offending voice messages.").  Thus, Defendant was not required to, nor had a right to, leave a voicemail at the 9515 number.  For the foregoing reasons, the Court is unpersuaded that, based on Defendant's rock-and-a-hard-place argument, it must conclude that non-consumers may not allege violations of section 1692d despite that the provision does not explicitly limit liability to consumers, and in fact, provides for liability to "any person."

As an alternative ground, Defendant contends it is entitled to summary judgment on this claim based on a bona fide error defense pursuant to section 1692k(c), which provides a "narrow exception to strict liability under the FDCPA."  *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006).  Specifically, section 1692k(c) states:

> A debt collector may not be held liable in any action brought
> under this subchapter if the debt collector shows by a
> preponderance of evidence that the violation was not intentional
> and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any
such error.

*See* 15 U.S.C. § 1692k(c).  The debt collector has the burden of proof in demonstrating the bona fide error affirmative defense applies.  *See Forkum v. Co-Operative Adjustment Bureau, Inc.*, 44 F. Supp. 3d 959, 964 (N.D. Cal. 2014).

Defendant argues it maintains "reasonable policies and procedures to avoid violations of the FDCPA and Rosenthal Act," including a "comprehensive training program."  *See* Doc. No. 28, pp. 17–18.  Defendant contends that "as it pertains to the allegations in this case, the GCS collectors were explicitly trained to avoid disclosing any information in a voicemail regarding a consumer's debt to a non-consumer such as Horowitz" and, "[t]he voicemails confirm that the collectors acted in accordance with their training."  *See* Doc. No. 28.  However, Plaintiffs do not allege GCS illegally disclosed information regarding a consumer's debt to a non-consumer.  Plaintiffs allege the opposite—that Defendant was required to, and failed to, comply with disclosure requirements under section 1692d(6) when it chose to leave a voicemail at the 9515 number.  Accordingly, it's unclear how Defendant's policies and procedures protect it from liability.

At most, the Court can construe Defendant's assertion of the defense as an argument that Defendant made a legal mistake—however reasonable or unreasonable—regarding the constitutional and/or statutory standing of persons situated as Plaintiffs are in this case.  However, the United States Supreme Court has held that the FDCPA's bona fide error defense does not apply "to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576–77 (2010).  The Supreme Court stated, "[o]ur law is [] no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law."  *Id.* at 582.  Further, the Supreme Court found "force in the suggestion

[. . .] that the broad statutory requirement of procedures reasonably designed to avoid 'any' bona fide error indicates that the relevant procedures are ones that help to avoid errors like clerical or factual mistakes." *Id.* at 587.  Defendant only points to procedures that are supposed to guard against violations of the law, but those do not shield Defendant from liability according to *Jerman*.  Accordingly, Defendant has not satisfied its burden to demonstrate that its conduct is exempt from liability under section 1692k(c).

Because Defendant makes no further arguments in support of its motion for summary judgment on this claim, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiffs' section 1692d(6) claim.

The Court now turns to Plaintiffs' arguments in support of summary judgment in their favor on this claim.  Plaintiffs argue that it is undisputed that Defendant's July 20 voicemail "failed to meaningfully disclose that it was coming from a debt collector." Doc. No. 34.  Plaintiffs are correct.  "The Ninth Circuit has not yet addressed what is required to satisfy the 'meaningful disclosure' element of § 1692d(6), however district courts in the Circuit increasingly agree that meaningful disclosure 'requires that the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call.'" *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1104 (W.D. Wash. 2012).  Courts in this Circuit have concluded that where a debt collection agency's employees fail to disclose the defendant's identity and the nature of defendant's business in calls or messages, they violate section 1692d(6)'s meaningful disclosure requirement.  *Id.* (citing *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1075 (E.D. Cal. 2007) and *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F. Supp. 2d 1104, 1112 (C.D. Cal. 2005)).  Defendant does not dispute the content of the voicemail, and the agent leaving the voicemail only stated her name, but not that she was calling on behalf of GCS, or the nature of GCS's business as a debt collection agency.  *See* Doc. No. 39-2, ¶ 19; Doc. No. 34-2, Exh. O.

1    Accordingly, the Court **GRANTS** Plaintiffs' motion for summary judgment as to

2  their section 1692d(6) claim.  Doc. No. 34.

3    *ii.    Section 1692e(11)*

4    Second, Plaintiffs allege Defendant violated 15 U.S.C. § 1692e(11) by failing to

5  disclose that it was attempting to collect an alleged debt.  Section 1692e(11) states:

6        A debt collector may not use any false, deceptive, or misleading
7        representation or means in connection with the collection of any
       debt. Without limiting the general application of the foregoing,
8        the following conduct is a violation of this section:

9          […]
         (11)    The failure to disclose in the initial written
10                communication with the consumer and, in
                addition, if the initial communication with the
11                consumer is oral, in that initial oral
                communication, that the debt collector is
12                attempting to collect a debt and that any
                information obtained will be used for that purpose,
13                and the failure to disclose in subsequent
                communications that the communication is from a
14                debt collector, except that this paragraph shall not
                apply to a formal pleading made in connection
15                with a legal action.

16  15 U.S.C. § 1692e(11).

17

18

19    Defendant argues Plaintiff Horowitz lacks statutory standing to bring this claim

20  because he is not a consumer as defined by section 1692a(3).  Doc. No. 28.  Defendant is

21  correct.  Liability under section 1692e(11) is limited to consumers.  *See* 15 U.S.C. §

22  1692e(11).  As noted above, Horowitz is not a consumer under the FDCPA because it is

23  undisputed that he was not "obligated or allegedly obligated to pay any debt" to GCS.

24  *See* 15 U.S.C. § 1692a(3).  Accordingly, only Plaintiff Hamby, as the alleged debtor, has

25  standing to assert a violation of this provision.  Defendant's only other argument as to

26  why it is entitled to summary judgment as to Plaintiff Hamby's claim under section

27

1   1692e(11) is that Plaintiff Hamby does not have constitutional standing, but the Court

2   rejects that argument, as discussed above.[9]

3          At first blush, the Court finds summary judgment appears appropriate in Plaintiff

4   Hamby's favor.  For example, the majority of courts find voicemails are communications

5   that must conform to the disclosure requirements of section 1692e(11).  *See e.g.*, *Lensch*

6   *v. Armada Corp.*, 795 F. Supp. 2d 1180, 1189 (W.D. Wash. 2011); *Horkey v. JVDB &*

7   *Associates, Inc.,* 333 F.3d 769, 774 (7th Cir. 2003); *Pasquale v. Law Offices of Nelson &*

8   *Kennard*, 940 F. Supp. 2d 1151, 1159 (N.D. Cal. 2013).  Further, summary judgment

9   appears appropriate based on the explicit requirements of section 1692e(11) and the

10  undisputed content of Defendant's July 20 voicemail.  *See* 15 U.S.C. § 1692e(11).

11         However, Plaintiffs do not move for summary judgment on this claim.  *See* Doc.

12  No. 34.  A court may grant summary judgment *sua sponte* where warranted.  *See*

13  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56.  However,

14  the Ninth Circuit has reversed a district court's grant of summary judgment in a similar

15  scenario, *Buckingham v. United States*, 998 F.2d 735 (9th Cir. 1993).  In *Buckingham*, the

16  district court, after only hearing argument on the defendant's motion for summary

17  judgment, granted summary judgment for the plaintiff.  *Id.* at 742–743.  The Ninth

18  Circuit reversed, stating that the district court should have provided the defendant an

19  opportunity to raise any disputed issues of material fact it would wish to in opposition of

20  summary judgment in the plaintiff's favor.  *Id.* at 742.  Accordingly, Defendant must be

21  afforded the opportunity to address whether the Court should enter judgment in Plaintiff

22  Hamby's favor on his claim for a violation of section 1692e(11).

23  //

24  //

25

26

27

---

[9] Defendant generally states that it is entitled to the bona fide error defense with regard to Plaintiffs' FDCPA claims, but does not explain how it would be entitled to such a defense as to the alleged violations of sections 1692e(11), e(10), or f(5).  *See* Doc. Nos. 28, 39, 47.  Accordingly, Defendant has not satisfied its burden to demonstrate its entitlement to the defense as to any claims arising out of those sections.

Thus, **IT IS HEREBY ORDERED THAT**:

1.  Defendant may serve and file a response to this Order on or before **December 23, 2016**.

2.  Plaintiff may serve and file a response to this Order on or before **January 6, 2017**.

3.  The trial of this matter previously scheduled for February 7, 2017, as well as the Pretrial Conference set for January 17, 2017, are **VACATED** and will be reset subsequent to the Court's final determination of which issues are appropriate for summary judgment.

### iii.    *Section 1692e(10)*

Third, Plaintiffs allege Defendant violated 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Plaintiffs allege Defendant's use of a local phone number—the 760 number—to call the 9515 number from San Antonio, Texas violated this provision.  *See* Doc. No. 34.  Plaintiff argues "this duplicitous act could frustrate a consumer's ability to intelligently choose his or her response to the call."  *See* Doc. No. 34.  Defendant contends it is entitled to summary judgment on this claim because the 760 is number is not false and thus "there was no false information contained on Horowitz's caller ID display."  *See* Doc. No. 28.  It is undisputed that when Defendant called and left the July 20 voicemail, the caller identification listed the 760 number, but did not display a name corresponding to the number.  Doc. No. 42-2, ¶ 31.  The parties also do not dispute that the 760 number "belonged to GCS at the time" of the July 20 call, and that "GCS did not actively block (or push) display of its name on the caller ID."  *Id.*

Accordingly, the Court must determine whether Defendant's use of a number with a local area code to place a call from a different state violated the FDCPA.  "Whether conduct violates § 1692e requires an objective analysis that takes into account whether

the least sophisticated debtor would likely be misled by a communication." *Forkum v. Co-Operative Adjustment Bureau, Inc.*, 44 F. Supp. 3d 959, 962 (N.D. Cal. 2014). "A debt collector's liability under § 1692e of the FDCPA is an issue of law." *Id.* (citing *Gonzales v. Arrow Financial Servs., Inc.,* 660 F.3d 1055, 1061 (9th Cir. 2011)).  Here, the Court finds the least sophisticated debtor would not find Defendant's conduct deceptive because the 760 number belonged to Defendant, and Defendant's July 20 voicemail provided a phone number with an 866 area code.  The provision of an 866 phone number undermines the idea that the least sophisticated debtor would think the caller was local.  Also, a handful of courts have granted summary judgment in favor of debt collectors in relatively similar cases. *See e.g.*, *Scheffler v. Integrity Fin. Partners, Inc.*, No. CIV. 12-188 DWF/TNL, 2013 WL 9768539, at *4 (D. Minn. Oct. 28, 2013) (granting summary judgment in the defendant's favor where the defendant had called from Minnesota, but used a Kansas number that it owned); *Bien v. Stellar Recovery, Inc.*, No. CA 14-366 S, 2015 WL 5554670, at *3 (D.R.I. Sept. 21, 2015); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1234 (D. Kan. 2011).  As a final note, Plaintiffs point the Court to a GCS employee's deposition testimony to make an argument regarding GCS's intentions behind using local phone numbers.  However, GCS's intentions are not relevant to whether the least sophisticated debtor would likely be misled.

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment as to Plaintiffs' claim based on 15 U.S.C. § 1692e(10).

### iv.    *Section 1692f(5)*

Fourth, Plaintiffs allege Defendant violated 15 U.S.C. § 1692f(5) by causing charges to be made to Plaintiffs' cell phone bill in the form of one lost minute on their 2,000-minute plan.  As discussed above, only Plaintiff Horowitz has standing to allege a violation of this section of the FDCPA.  Section 1692f(5) prohibits "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the

communication," which includes, but is not limited to, charges such as "collect telephone calls and telegram fees."  *See* 15 U.S.C. § 1692f(5).

Defendant argues it is entitled to summary judgment on this claim because it did not conceal the purpose of its phone call.  Defendant argues it was required to refrain from disclosing to Plaintiff Horowitz that it was attempting to collect Plaintiff Hamby's debt, and that Plaintiff Hamby was not charged.  The Court agrees that Plaintiff Hamby cannot sue under this section.  However, the Court, as discussed above, rejects Defendant's rock-and-a-hard-place argument as an argument for nonliability to Plaintiff Horowitz.  Defendant makes no further arguments in support of its motion to dismiss this claim.  Plaintiff Horowitz contends it is entitled to summary judgment on this claim because Horowitz lost a minute on his cell phone plan, which he paid for.  Plaintiff produces a Verizon bill indicating that the July 20 voicemail caused the loss of one minute on the plan.  Defendant does make any arguments nor produce any evidence to dispute that Plaintiff Horowitz lost a minute on the plan he paid for.

Accordingly, the Court **GRANTS** Plaintiffs' motion for summary judgment as to Plaintiff Horowitz's claim for violation of section 1692f(5), and **DENIES** Defendant's motion for summary judgment as to that claim.

## E.    Rosenthal Act Claims

Plaintiffs also bring claims for violations of California's Rosenthal Act.  The Rosenthal Act is California's version of the FDCPA, as it "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations.  *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012); *see* Cal. Civ. Code § 1788 *et seq.*  Accordingly, whether an act "violates the Rosenthal Act turns on whether it violates the FDCPA."  *Riggs*, 681 F.3d at 1100.  Rosenthal Act violations and FDCPA violations are viewed identically.  Thus, the Court's above rulings regarding the parties' motions for summary judgment as to the FDCPA claims apply equally to Plaintiffs' Rosenthal Act claims.

**F.     Telephone Consumer Protection Act Claim**

Additionally, Plaintiffs allege Defendant violated the TCPA.  As discussed, only Plaintiff Horowitz has standing to bring this claim.  The purpose of the TCPA is to protect the privacy interests of telephone users by placing restrictions on unsolicited, automated telephone calls.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  Section 227(b)(1)(A)(iii) of the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party)[10] using any automatic telephone dialing system or an artificial or prerecorded voice–(iii) to any telephone number assigned . . . to the cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  In other words, to prove a TCPA claim, a plaintiff must demonstrate that the defendant called a cellular telephone number.  *See Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b)(1).  "The term 'automatic telephone dialing system' means 'equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.'"  *Id.*; 47 U.S.C. § 227(a)(1).

In response to Plaintiffs' assertion that they ported the 9515 number from a landline to a cellular plan in March 2013, Defendant argues "the testimony and records reflect only that in March 2013, one of the Plaintiffs requested the 9515 Number be converted from a landline phone to a wireless phone."  *See* Doc. No. 39-2, ¶ 7.  Defendant states, "[t]here is no evidence in the record as to when the 9515 Number was <u>actually</u> converted to wireless."  *Id.* (emphasis in original).  However, Defendant's response merely amounts to an argument that Plaintiff has not sufficiently proven the line was ported to a cellular plan, rather than producing any evidence to demonstrate that the line was in fact not converted.  Further, the evidence is sufficient to demonstrate that the

---

[10] The parties do not dispute that neither one of the plaintiffs consented to the call, and that Defendant did not call the 9515 number for emergency purposes.

line was ported in March 2013.  In sworn deposition testimony, both Plaintiff Hamby and Plaintiff Horowitz state that the line was ported from a landline to a wireless service. Plaintiff Hamby recalls that occurred around "February 28th of 2013," while Plaintiff Horowitz recalls it occurring in March 2013.  Additionally, Plaintiffs provide a record that Verizon produced in response to Plaintiffs' subpoena, which indicates that someone made a port request for the 9515 number, and that the "customer's old provider [] agreed to release the number to Verizon *Wireless*" on March 26, 2013.  Doc. No. 34-2, Exh. N (emphasis added).  Plaintiffs also provide a Verizon Wireless bill, which indicates that the 9515 number was included on a plan allowing *texting* and calling from July 16, 3013 to August 15, 2013.  *See* Doc. No. 34-2, Exh. W (describing the plan as "Nationwide TLK&TXT Share 2000").  That evidence, in combination, suffices to demonstrate that the 9515 number had been ported to a cellular plan by the time of the July 20 voicemail.

The Court now turns to whether either party is entitled to summary judgment on the issue of whether Defendant used an automatic telephone dialing system ("ATDS"). Defendant argues it did not use an ATDS because the call was "made in preview mode, which entails a GCS manager selecting the numbers to be dialed that day by creating a 'campaign' and loading the campaign into GCS' dialing system."  Doc. No. 28.  Then, "a specific number is presented to an agent, who then [. . .] must launch the call manually" if the agent chooses to.  *See* Doc. No. 28.  Defendant argues that "[b]ecause human intervention was required to make the call, it was not made with an ATDS."  *See* Doc. No. 28.  Plaintiff does not dispute those facts, but rather argues that, under the law, the system is an ATDS.  Plaintiff relies heavily on the FCC's July 10, 2015 Declaratory Ruling and Order,[11] which discussed the definition of autodialers.  *See* Doc. No. 34; 2015 FCC Order.  The FCC stated:

---

[11] "Since the statute's passage in 1991, the FCC has issued regulations expanding the statutory definition of an ATDS, and this Court is bound by those rulings under the Hobbs Administrative Orders Review Act," 28 U.S.C. § 2342(1).  *See Sherman v. Yahoo! Inc.*, 150 F. Supp. 3d 1213, 1216 (S.D. Cal. 2015).

> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") *even if it is not presently used for that purpose*, including when the caller is calling a *set list of consumers*. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason.

*See* 2015 FCC Order, 30 F.C.C. Rcd. at 7971–72 (emphasis added).  Later in the FCC Order, the FCC again emphasized, "that Congress intended a broad definition of autodialer, and that the Commission has already twice [stated] that autodialers need only have the 'capacity' to dial random and sequential numbers, rather than the 'present ability' to do so."  *Id.* at 7974.  "Hence, any equipment that has the requisite 'capacity' is an autodialer and is therefore subject to the TCPA."  *Id.*  The FCC Order also touches on the interplay of human intervention, stating that one of the "basic functions of an autodialer [is] to 'dial numbers without human intervention.'"  *Id.* at 7975.  "How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination."  *Id.*

Here, the evidence submitted by the parties is inconclusive.  For example, in GCS's Chief Compliance Officer and Legal Counsel Brad Batig's deposition, Batig describes in some detail LiveVox, which is the "telephone dialing system" that GCS uses.  *See* Doc. No. 34, Exh. D at 13.  Batig further states that "preview mode" is just "one of the functions within LiveVox."  *See* Doc. No. 30-1, Exh. 7 at 60.  At the time of the July 20, 2013 voicemail, there were three other dialing modes available on LiveVox— predictive mode, preview mode, and manual mode.  *Id.* at 68–70.  The three modes ran "through separate set[s] of queuers," which constitute separate hardware.  *Id.*

Accordingly, Defendant may have sufficiently demonstrated that there was some human interaction used, and perhaps required, to make phone calls when GCS's system was in preview mode, but Defendant has not sufficiently foreclosed the possibility that its system also had the capacity to "store or produce, and dial random or sequential numbers." *See* 2015 FCC Order, 30 F.C.C. Rcd. at 7972.  Also, Batig indicates that GCS's system may also function as a predictive dialer, which, it is well-settled, would "satisfy the TCPA's definition of 'autodialer.'" *See* 2015 FCC Order, 30 F.C.C. Rcd. at 7972.  Likewise, Plaintiff does not produce evidence sufficient to dispel the uncertainty surrounding GCS's system's capacities—for example, any expert testimony.  Thus, having reviewed the parties' summary judgment motions and associated evidentiary exhibits, the Court finds there are genuine issues of material fact regarding whether Defendant used an ATDS when it called the 9515 number on July 20.

Accordingly, the Court **DENIES** both Defendant's and Plaintiffs' motions for summary judgment as to Plaintiff Horowitz's TCPA claim.  Because the Court is unable to determine as a matter of law whether Defendant used an ATDS, the Court need not consider whether Plaintiff Horowitz would be entitled to treble damages for such a violation.

## G.    California Invasion of Privacy Act Claim

Lastly, Plaintiff Horowitz asserts a violation of the CIPA.  Section 632.7 of the CIPA imposes penalties on "[e]very person who, without the consent of all parties, intercepts *or receives* and intentionally records . . . a communication transmitted between . . . a cellular radio telephone and a landline . . . ."  Cal. Penal Code § 632.7(a) (emphasis added).  To prove a violation of section 632.7, a plaintiff "must prove by a preponderance of the evidence: (1) that [the defendant] recorded a call with [the plaintiff], (2) that one of the parties to the recorded call was using a cell phone, and (3) that [the plaintiff] did not consent to the recording." *See Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac.*

*Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016).

Consent is a complete defense to a claim under § 632.7.  *AJ Reyes v. Educ. Credit Mgmt. Corp.*, No. 15CV628-BAS-JMA, 2016 WL 2944294, at *5 (S.D. Cal. May 19, 2016).  "Consent may be express or may be implied in fact from the 'surrounding circumstances indicating that [the party to the call] knowingly agreed to the surveillance.'"  *See Nei*, 2016 WL 4886933 at *3 (quoting *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996)).  Thus, "a warning at the outset of a conversation is sufficient to comply with Section 632.7."  *Maghen v. Quicken Loans Inc.*, 94 F. Supp. 3d 1141, 1145 (C.D. Cal. 2015); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118, 137 P.3d 914, 930 (2006).  However, it is not necessary to give such a warning in every circumstance.  *Maghen*, 94 F. Supp. 3d at 1145.

Here, GCS has recordings of the following six calls made by Plaintiff Horowitz to GCS:

1.  A July 16, 2014 call between Horowitz and Rosie Bortello

2.  A July 16, 2014 call between Horowitz and a male speaker

3.  A July 16, 2014 call between Horowitz and Rosie Bortello[12]

4.  A July 18, 2014 call between Horowitz and a male speaker named Julian

5.  A July 18, 2014 call between Horowitz and Elizabeth Rodriguez

6.  A July 18, 2014 call between Horowitz and Deborah Guerra[13]

*See* Doc. No. 34, Exh. Q–V.

Defendant does not dispute that those calls were recorded.  However, GCS does not have recordings of two July 18, 2014 phone calls between Horowitz and Epiphany

---

[12] The transcriber who transcribed the audio recordings refers to a "Rosie Patella."  *See* Doc. No. 34, Exh. Q, S. In its briefing, GCS refers to the same agent as "Rosie Botello."  The Court assumes GCS, who employed Botello, has knowledge of the correct spelling, and thus adopts GCS's spelling.

[13] At the beginning of this call, Plaintiff spoke with Epiphany Golston, who then transferred Plaintiff's call to Guerra.  *See* Doc. No. 42-2, ¶ 43.  The parties do not dispute that GCS has no recording of the conversation between Horowitz and Golston.  *Id.*

Golston, or his conversation on July 16, 2014 with Nancy Zamora.  *See* Doc. No. 42-2, ¶ 38.  Defendant moves for summary judgment in its favor as to those calls, arguing that because "the uncontroverted evidence establishes that there [are] no recordings," Horowitz "cannot meet his burden of establishing a violation of CIPA."  *See* Doc. No. 28. Plaintiff does not dispute that GCS does not have such recordings.  Plaintiff makes no arguments, nor produces any evidence, to oppose Defendant's motion for summary judgment on Plaintiff's CIPA claims insofar as they are based on those calls. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff Horowitz's CIPA claims based on the July 18, 2014 calls with Golston, and the July 16, 2014 conversation with Zamora.

Regarding the six recorded calls, Defendant argues that Horowitz consented to the recording of his initial call to Botello on July 16, 2014 because toward the end of the call, he asked Botello if the call was being recorded, and when she said that it was, he said "okay" prior to asking Botello one more question, then ending the call.  Doc. No. 42-2, ¶ 37; Doc. No. 28-7, Exh. 17.  Defendant contends that Horowitz did not "object or request deletion of the recording."  Doc. No. 39.  Defendant fails to cite any authority supporting the idea that one can retroactively consent to violations of the CIPA, nor does Defendant cite to authority requiring a plaintiff to object or request deletion of a recording in order to have a viable claim for violation of the CIPA.  Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's initial call to Botello on July 16, 2014.

As its final argument, Defendant argues that Plaintiff's CIPA claims are barred by the doctrine of unclean hands because Horowitz identified himself as Hamby, tried to obtain information regarding Hamby's account, "attempted to obtain confidential information on GCS' business operations and systems, [] threatened to sue," and refused to tell GCS his grounds for such a lawsuit.  *See* Doc. No. 28.  Defendant argues that, "[i]n light of the litigious history of both Plaintiffs, there can be no other conclusion than that

these calls were made in an effort to conjure additional claims against GCS." *Id.*
However, the doctrine of unclean hands is inapplicable here.  For the doctrine to apply,
"there must be a direct relationship between the misconduct and the claimed injuries so
that it would be inequitable to grant the requested relief." *Kendall-Jackson Winery, Ltd.
v. Superior Court*, 76 Cal.App.4th 970, 979 (1999), *as modified on denial of reh'g* (Jan.
3, 2000) (internal alterations and quotations omitted).  Here, Horowitz's "misconduct"
does not have a direct relationship to his claimed injuries.  What Horowitz said in his
phone calls is essentially irrelevant to his claim that GCS invaded his privacy by
recording his calls without first disclosing that it was doing so.  Further, the transcripts of
the six recorded calls indicate that Horowitz was trying to obtain information regarding
Hamby's account, which it appears GCS had substantial trouble locating.  Accordingly,
the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's CIPA
claims based on the remaining recorded calls.

   Plaintiff also moves for summary judgment in his favor as to the six recorded calls.
While there is no genuine dispute of material fact as to whether Defendant recorded these
phone calls without first disclosing that it was doing so,[14] there exists a genuine dispute
of material fact as to whether Plaintiff impliedly consented to the recording of any of
these phone calls.  For example, when Plaintiff first called GCS on July 23, 2013, the
agent he spoke to immediately informed him that the call may be monitored or recorded.
*See* Doc. No. 34-2, Exh. P.  Then, on July 16, 2014, in Plaintiff's first call that day, he
asked a GCS representative at the end of their conversation, "Hey, Rosie, is this a
recorded line?"  *See* Doc. No. 34-2, Exh. P.  Rosie Botello responded, "Yes, sir, this is a
recorded line."  *Id.*  Moreover, in Plaintiff's first call on July 18, 2014, Plaintiff asked, at
the end of his conversation, whether the call was being recorded, to which the agent
responded that it was.  *See* Doc. No. 34-2, Exh. T.  Accordingly, after any one of these

---

[14] *See* Doc. No. 39-2, ¶¶ 29, 31.

phone calls, a reasonable juror could find that Plaintiff was put on notice that any subsequent phone calls to GCS would be recorded and thus, impliedly consented to the recordings.  This is particularly true of Plaintiff's second call to Rosie Botello—the agent that had told him earlier that same day that "this is a recorded line."  *See* Doc. No. 34-2, Exh. P.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment on his CIPA claims.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment, Doc. No. 28, and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for partial summary judgment, Doc. No. 34.  Based on the Court's above findings regarding Plaintiff Hamby's 15 U.S.C. § 1692e(11) claim, the Court also **VACATES** the trial currently set for February 7, 2017, as well as the Pretrial Conference set for January 17, 2017.

**IT IS SO ORDERED.**

Dated:  December 12, 2016

Hon. Michael M. Anello
United States District Judge